UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:  3:14-cv-30100-MGM

| | |
|---|---|
| FAITH JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| AMHERST NURSING HOME, INC. D/B/A ) | |
| CENTER FOR EXTENDED CARE AT ) | |
| AMHERST, KEENA KEERNAN and ) | |
| RASIDI AKODO, ) | |
| ) | |
| Defendants. ) | Dated:  August 5, 2014 |

**DEFENDANTS AMHERST NURSING HOME, INC. d/b/a CENTER FOR EXTENDED CARE AT AMHERST'S AND KEENA KEERNAN'S [*sic*] MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS**

## I.  INTRODUCTION

This case arises out of the Plaintiff, Faith Johnson's (hereinafter the "Plaintiff" or "Johnson") former employment at the Defendant, Amherst Nursing Home, Inc. d/b/a Center for Extended Care at Amherst (hereinafter "CECAA" or "Defendant CECAA").  The instant Motion to Dismiss is made on behalf of CECAA and Defendant Keena Keeran[1] (hereinafter "Keeran" or "Defendant Keeran").  Defendant Rasidi Akodo is no longer employed by CECAA and is not represented by the undersigned.

As articulated more fully herein, the Defendants CECAA and Keeran move to dismiss all claims alleged against them on various grounds, including without limitation, pursuant to Federal

---

[1] The Complaint incorrectly identifies Defendant Keeran as "Keena Keernan".

Rules of Civil Procedure 12(b)(6) and 12(b)(1).[2]  Specifically, with respect to the claims against CECAA and Keeran, the Plaintiff has failed to meet the minimum pleading standards articulated in *Twombly-Iqbal*, requiring her to plead facts sufficient to allege a plausible entitlement to relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 559 (2007). Additionally, the Plaintiff has further failed to meet her burden of establishing the basis for this Court's supplemental jurisdiction over the state law claims alleged.   As such, the Defendants CECAA and Keeran respectfully request that this Court dismiss all claims alleged against them for failure to state a claim and/or failure to establish subject matter jurisdiction.

## II.    ALLEGED FACTS[3]

The Plaintiff was employed by CECAA as a certified nurse aide ("CNA") from approximately 2010 to September 22, 2012.  (Plaintiff's Complaint, hereinafter "Compl." ¶¶ 7, 18).  The Defendant, Rasidi Akodo, was also a CNA employed by CECAA.  (Compl.  ¶ 10). The Plaintiff alleges that in August 2012, Defendant Akodo sexually assaulted her.  (Compl.  ¶ 10).  The Plaintiff alleges that she reported the sexual assault to the management of CECAA. (Compl. ¶ 13).  Defendant Akodo was separated from employment with CECAA following the Plaintiff's report. (Compl. ¶ 19).

The Plaintiff alleges that management of CECAA, including Defendant Keeran, began to harass the Plaintiff after her report of sexual assault.  (Compl.  ¶ 15).  The Plaintiff alleges that Defendant Keeran began to harass and created a hostile work environment for the Plaintiff by

---

[2] As previously stated, the undersigned does not represent Defendant Rasidi Akodo, and as such, this Motion does not address the claims alleged against him in his individual capacity and for which he would be personally liable, more specifically, Counts VIII, IX, and X.

[3] The Defendants treat the facts as alleged in the Plaintiff's Complaint as true solely for the purposes of the instant Motion to Dismiss.

"giv[ing] the Plaintiff the cold shoulder."  (Compl. ¶ 15).   The Plaintiff also alleges that management changed her work schedule and that the schedule change ultimately resulted in her termination, which she subsequently "appealed" and "won."  (Compl. ¶ 15-16).   The Plaintiff states that shortly thereafter, "due to the hostile work environment and the harassment and retaliation itself, the Plaintiff was forced to resign from her employment with the Defendant CECAA and was constructively discharged." (Compl. ¶ 17).

The Plaintiff baldly asserts that she "has satisfied the prerequisites for filing suit." (Compl. ¶ 22). To be sure, the Plaintiff filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD") on July 3, 2013, which was also filed with the Equal Employment Opportunity Commission ("EEOC").  *See Exhibit 1.*[4]

## III.   MOTION TO DISMISS STANDARD

Motions to dismiss under Federal Rules of Civil Procedure Rule 12(b)(6) test the sufficiency of the pleadings. Thus, when confronted with a motion to dismiss, the Court accepts

---

[4] It is the Defendant's position that the court's review of the Plaintiff's Charge of Discrimination (the "Charge") filed with the MCAD, attached hereto, should not convert this Motion to Dismiss into a motion for summary judgment. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) ("Ordinarily, of course, any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56. . . However, courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.") (citations omitted); *Wong v. Resolve Tech.*, Civ.A.No. 10-11642-DJC, 2011 WL 3157198 (D. Mass. July 25, 2011) (considering an MCAD charge of discrimination attached as an exhibit to a motion to dismiss, without converting the motion to one for summary judgment).

It is well-established that prior to filing a civil action for employment discrimination under Title VII, a plaintiff must first file a timely charge of discrimination with the appropriate administrative agency— the EEOC for claims under federal law, and the MCAD for claims under state law. *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996). A charge of discrimination must be filed with the EEOC and/or MCAD within 300 days after the unlawful conduct occurred. MASS. GEN. LAWS ch. 151B, § 5; 42 U.S.C. § 2000e-5(e)(1); *Tuli v. Brigham & Women's Hosp.*, 656 F.3d 33, 40 (1st Cir. 2011) (noting that "[b]oth the federal and state provisions require that a charge be filed within 300 days of the alleged unlawful employment practice"). Given these administrative prerequisites, the Court's consideration of the content of the MCAD charge is appropriate in light of the Plaintiff's bald assertion that she "has satisfied the prerequisites for filing suit." (Compl. ¶ 22). Additionally, the MCAD charge is a public record, which meets at least one, if not all, of the exceptions articulated by the First Circuit in *Watterson.*

as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *Cooperman v. Individual, Inc.,* 171 F.3d 43, 46 (1st Cir. 1999).  Dismissal is only appropriate if the complaint, so viewed, fails to allege a "plausible entitlement to relief." *Rodriguez–Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 95 (1st Cir. 2007) (quoting *Twombly*, 550 U.S. at 559).

Following the Supreme Court's decisions in *Bell Atlantic Corporation v. Twombly* and *Ashcroft v. Iqbal,* whether a complaint should survive a motion to dismiss depends upon whether the pleading satisfies the "plausibility" standard.  *Iqbal,* 556 U.S. at 678; *Twombly,* 550 U.S. at 559-60.  The First Circuit has made clear, "[i]n resolving a motion to dismiss, a court should employ a two-pronged approach." *Ocasio–Hernández v. Fortuño–Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (applying *Iqbal* and *Twombly*).  "It should begin by identifying and disregarding statements in the complaint that merely offer 'legal conclusion[s] couched as . . . fact[ ]' or '[t]hreadbare recitals of the elements of a cause of action.'" *Id.* (quoting *Iqbal,* 556 U.S. at 678) (further citation omitted).  "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Id.* (quoting *Iqbal,* 556 U.S. at 680). The remaining "[n]on-conclusory factual allegations in the complaint must be then treated as true, even if seemingly incredible" and assessed to determine whether they "allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal,* 556 U.S. at 678). If they do, "the claim has facial plausibility." *Id.* (quoting *Iqbal,* 556 U.S. at 678). "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." *Id.* (quoting *Sepúlveda–Villarini v. Dep't. of Educ. of P.R.,* 628 F.3d 25, 29 (1st Cir. 2010)).  "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Morales-Cruz v. Univ. of Puerto*

*Rico*, 676 F.3d 220, 224 (1st Cir. 2012) (quoting *SEC v. Tambone,* 597 F.3d 436, 442 (1st Cir. 2010)).

IV. **LEGAL ARGUMENT**

    A. **The Plaintiff's Claims for Sexual Harassment and Sex/Gender Discrimination and Harassment Under State and Federal Law (Counts I, II, IV and V) Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).**

        1. *The Plaintiff's Claims for Sexual Harassment and Sex/Gender Discrimination and Harassment Under State and Federal Law (Counts I, II, IV and V) are Time-Barred by the Statute of Limitations.*

There are two types of impermissible employer sexual harassment under Title VII and Massachusetts General Laws Chapter 151B: (1) "quid pro quo" sexual advances or requests that are made an explicit or implicit condition of employment or a basis for employment decisions; and (2) conduct of a sexual nature that creates a hostile work environment. *See Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65 (1986) (Title VII); *Ramsdell v. Western Mass. Bus Lines, Inc.,* 415 Mass. 673, 676-677, 615 N.E.2d 192, 195 (1993) (Chapter 151B). "In general, a plaintiff may recover on [a hostile work environment] theory when ··the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Noviello v. City of Boston*, 398 F.3d 76, 84 (1st Cir. 2005) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted) (citing *O'Rourke v. City of Providence,* 235 F.3d 713, 728 (1st Cir. 2001); *Muzzy v. Cahillane Motors, Inc.,* 434 Mass. 409, 749 N.E.2d 691, 694 (2001)). Sexual harassment is a form of sex discrimination prohibited

by Title VII. *Meritor Sav. Bank*, 477 U.S. at 65.[5]  It appears that the Plaintiff is alleging a hostile work environment claim of sexual harassment and also using that claim as the basis for her gender/sex discrimination claim.

Prior to filing a civil action for any type of employment discrimination under Title VII, a plaintiff must first file a timely charge of discrimination with the appropriate administrative agency— the Equal Employment Opportunity Commission ("EEOC") for claims under federal law, and the Massachusetts Commission Against Discrimination ("MCAD") for claims under state law. *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996). A charge of discrimination must be filed with the EEOC and/or MCAD within 300 days after the unlawful conduct occurred. MASS. GEN. LAWS ch. 151B, § 5; 42 U.S.C. § 2000e‑5(e)(1); *Tuli v. Brigham & Women's Hosp.,* 656 F.3d 33, 40 (1st Cir. 2011) (noting that "[b]oth the federal and state provisions require that a charge be filed within 300 days of the alleged unlawful employment practice").

The Plaintiff filed her Charge with the MCAD[6] on July 3, 2013.  Based on the 300-day statute of limitations, the Plaintiff is foreclosed from recovery for any incidents that occurred prior to September 6, 2012.

---

[5]  While the Plaintiff has made claims of both "Sexual Harassment" and "Sex/Gender Discrimination and Harassment" under both Title VII and Massachusetts General Laws Chapter 151B, it appears that all such claims all arise out of the alleged sexual assault by Defendant Akodo, as the Plaintiff presents no independent factual basis to support a claim of gender discrimination standing alone.  Thus, the Defendants will address both the "Sexual Harassment" and "Sex/Gender Discrimination and Harassment" claims as one and the same.

The only allegations that could possibly support a claim for sex/gender discrimination, are "'legal conclusion[s] couched as ... fact[]'or '[t]hreadbare recitals of the elements of a cause of action'" and should not be considered by the Court. *Ocasio–Hernández,* 640 F.3d at 12 (quoting *Iqbal,* 556 U.S. at 678) (further citation omitted); *see, e.g.,* Compl. ¶¶ 29, 44 ("The Plaintiff was treated differently as to the terms and conditions of her employment based upon the Plaintiff's sex/gender and the sexual harassment of her by the Defendant Akodo, an employee of the Defendant CECAA.").

Here, it appears that the sole act alleged to support the Plaintiff's claims for "Sexual Harassment" and "Sex/Gender Discrimination and Harassment" (Counts I, II, IV and V) is the alleged sexual assault by Akodo, a coworker.  However, the Plaintiff alleges that the sexual assault occurred in August 2012, a date which is outside of the 300 day statute of limitations.  As such, the Plaintiff is barred from recovery as to the claims which are based solely on the sexual assault.

Moreover, aside from the sexual assault, the Plaintiff has offered nothing more than "[legal conclusion[s] couched as . . . fact[ ]" or "[t]hreadbare recitals of the elements of a cause of action" in support of her claims for sexual harassment and sex/gender discrimination.  *Ocasio–Hernández,* 640 F.3d at 12 (quoting *Iqbal,* 556 U.S. at 678) (further citation omitted).  The Plaintiff has not alleged any other conduct of a sexual nature that could arguably form the basis for a sexual harassment claim occurring within the statute of limitations.  Nor has the Plaintiff alleged any facts whatsoever suggesting a prima facie case of discrimination based on her sex or gender, aside from the allegations of sexual harassment.[7]

Because the only conduct alleged by the Plaintiff that could arguably support a claim for sexual harassment (and any derivative sex discrimination claim) occurred outside of the statute of limitations period, the Plaintiff is barred from recovery as to claims based on that conduct, and therefore her claims for sexual harassment and sex/gender discrimination and harassment under state and federal law (Counts I, II, IV and V) should be dismissed.

---

[6] The Defendant recognizes the work-sharing agreement between the MCAD and the EEOC results in the automatic filing with the EEOC of charges received by the MCAD.  *See Seery v. Biogen, Inc.*, 203 F. Supp. 2d 35, 41-42 (D. Mass. 2002).

[7] Again, although the Defendants assume that the Plaintiff's claims for "Sex/Gender Discrimination and Harassment" are based on the alleged sexual harassment by Defendant Akodo, it is clear that the Plaintiff has not established a prima facie case of sex/gender discrimination that is separate or distinct from the allegations of sexual harassment.

i.      The "Continuing Violation" Exception to the Statute of Limitations
        is Not Applicable.

To the extent the Plaintiff attempts to accomplish jurisdiction through the "continuing violation" exception and defeat the application of statute of limitations to the incident of sexual assault, established precedent is clear that the facts as alleged by the Plaintiff do not qualify for the exception.

Under both Title VII and Chapter 151B, plaintiffs may rely on conduct that occurred when the conduct amounts to a "continuing violation." *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002); 804 Code Mass. Regs. § 1.10(2). The United States Supreme Court clarified the reach of the Title VII continuing violation doctrine in *Morgan,* where the Court held that while the continuing violation doctrine may provide an exception to the statute of limitations for claims which by "[t]heir very nature involve[ ] repeated conduct," *id.* at 115, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. "Discrete acts" include such acts as "termination, failure to promote, denial of transfer, or refusal to hire," and, accordingly, a plaintiff "can only file a charge to cover discrete acts that ‑occurredǀ [i.e., the day that the discrete discriminatory or retaliatory act ‑happenedǀ] within the appropriate time period." *Id.* at 114. The *Morgan* court, in differentiating "hostile environment claims" from such discrete acts, held that a defendant may be liable for discriminatory or retaliatory conduct that falls outside of the limitations period when "all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* at 122.

"Massachusetts law recognizes that ‑some claims of discrimination involve a series of related events that have to be viewed in their totality in order to assess adequately their

discriminatory nature and impact." *Noviello v. City of Boston*, 398 F.3d 76, 86 (1st Cir. 2005) (quoting *Cuddyer v. Stop & Shop Supermarket Co.,* 434 Mass. 521, 750 N.E.2d 928, 936 (2001)). "Under this continuing violation doctrine, a plaintiff who ordinarily would be unable to recover damages for discrete acts of discrimination falling outside the limitations period may avoid that bar if those acts are shown to be part of a pattern of discrimination anchored by acts that occurred within the limitations period." *Id.* (citing *Cuddyer* at 750 N.E.2d at 936–37).  "[I]n order to invoke this doctrine, a claimant must show at a bare minimum a series of discriminatory acts that emanate from the same discriminatory animus." *Id.* at 87 (citing *Provencher v. CVS Pharmacy,* 145 F.3d 5, 14 (1st Cir. 1998)).

Here, the Plaintiff has alleged only one act of a sexual nature committed by Defendant Akodo in August 2012.  There is no allegation that the Defendant Akodo was a supervisor or member of management.  The remaining allegations of specific conduct articulated in the Plaintiff's Complaint are attributed to "the management" of CECAA.  There is no allegation in the Plaintiff's Complaint that any member of management sexually harassed  the Plaintiff or otherwise discriminated against the Plaintiff on the basis of her gender.  There is no allegation in the Complaint that the management of CECAA failed to remedy the alleged sexual harassment or forced the Plaintiff to continue working in an environment where she was subjected to sexual harassment.  *Cf. White v. DaVita, Inc.,* Civ. A. No. 12-10964-DJC, 2013 WL 65409 (D. Mass. Jan. 3, 2013) (applying the continuing violation doctrine exception to conduct outside of the limitations period where the plaintiff was required to work with harassing coworker after he attacked her).

Rather, the allegations of conduct attributed to the management of CECAA appear to be allegations of retaliation against the Plaintiff due to her reporting of the alleged sexual assault.

As recognized by the First Circuit in *Noviello*, "sexual harassment and retaliatory harassment . . . must be viewed for what they are: two separate and independent harms." *Noviello*, 398 F.3d at 87; *see also Goguen v. Quality Plan Adm'rs,* 11 Mass.L.Rptr. 288, 2000 WL 282485, at *4 (Mass. Super. 2000) (holding that sexual harassment by one person and subsequent retaliation by another are not sufficiently related to add up to a single continuing violation); *cf. Sitar v. Ind. Dep't. of Transp.,* 344 F.3d 720, 726 (7th Cir. 2003) (noting generally that "retaliation . . . and sexual harassment charges are not ┤like or reasonably related┘ to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another").

The alleged "discrete acts" of management were separate and independent of the sexual assault committed by Akodo.  Again, the allegations of conduct attributable to management cannot support a claim of sexual harassment or sex/gender discrimination.

It is clear the Plaintiff cannot avail herself of the continuing violation exception for the purpose of attempting to defeat the application of the statute of limitations barring her from recovery for claims related to the alleged sexual assault.  The Plaintiff alleges conduct by Defendant Akodo that is sexual in nature and conduct separate from that by management that is not alleged to be sexual in any way whatsoever.  The only conduct arguably alleged within the statute of limitations is conduct of management (rather than of Akodo), which was not even alleged to be severe or pervasive conduct of a sexual nature and therefore fails to support a sexual harassment claim.  The disparity of alleged motives between Defendant Akodo and the management of Defendant CECAA precludes the Plaintiff from asserting a continuing violation argument.

2.    *Alternatively, the Plaintiff has Failed to State a Claim for Sexual Harassment and Sex/Gender Discrimination and Harassment Under State and Federal Law (Counts I, II, IV and V) Upon Which Relief Can be Granted.*

Aside from the statute of limitations issues related to the alleged sexual assault, even if the Court were to consider the alleged sexual assault by a coworker, the Plaintiff has still failed to state a claim upon which relief can be granted.

An employer is liable for a hostile environment created by a non-supervisory coworker only if it was õnegligent either in discovering or remedying the harassment,ö *Torres-Negron v. Merck & Co.,* 488 F.3d 34, 40 (1st Cir. 2007), or in other words if it õknew or should have known of the charged . . . harassment and failed to implement prompt and appropriate corrective action.ö *White v. N.H. Dep't of Corr.,* 221 F.3d 254, 261 (1st Cir. 2000) (citation omitted). Plaintiff bears the burden of proof on this point. *See Crowley v. L.L. Bean, Inc.,* 303 F.3d 387, 401 (1st Cir. 2002).

It is clear that the only allegation of conduct that could arguably be construed as sexual harassment is the alleged sexual assault of the Plaintiff by Defendant Akodo.  The Complaint makes no allegation that Defendant Akodo is a supervisor, and in fact establishes that he was a CNA like the Plaintiff. (Compl. ¶ 10).  Thus, for Defendant CECAA to be liable for the conduct of Defendant Akodo, the Plaintiff must plead good faith facts indicating that Defendant CECAA knew or should have known of the conduct of Defendant Akodo and failed to implement prompt and appropriate corrective action.

Aside from conclusory statements that the Defendant failed to take reasonable steps to ensure that the alleged sexual harassment of the Plaintiff would not continue, the Plaintiff has failed to meet her burden.  In fact, allegations in the Plaintiffös Complaint establish the required

taking of reasonable steps by the Defendants.  The Plaintiff's Complaint recognizes that the Defendant CECAA asked Defendant Akodo to resign from his position.  (Compl. ¶ 19).  The Plaintiff makes no allegation whatsoever that she was required to continue working with Defendant Akodo or that the alleged sexual harassment of her by Defendant Akodo continued following her report of the sexual assault to management.  The Plaintiff simply cannot meet her burden of establishing liability on behalf of CECAA for the acts of Akodo, but rather, pleads facts proving the Defendants are not liable.

Additionally, while the Plaintiff has alleged that management of Defendant CECAA "began to harass" her following her report of sexual harassment, the allegations of conduct by management are neither sexual in nature nor are they alleged to be based on the Plaintiff's gender. (Compl. ¶ 15).  While the allegations of conduct by management arguably may give rise to a claim of retaliation for reporting the sexual harassment, they cannot form the basis of a claim of sexual harassment or gender discrimination.

**B.     The Plaintiff's Claims for Sexual Harassment, Sex/Gender Discrimination and Harassment and Retaliation by the Defendants (Counts I, II, III, IV, V, VI) Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6) as the Plaintiff Has Failed to Plead Facts Establishing a Constructive Discharge.**

An allegation of constructive discharge "presents a 'special wrinkle' that amounts to an additional prima facie element of a Plaintiff's claim." *Landrau-Romero v. Banco Popular De Puerto Rico,* 212 F.3d 607, 613 (1st Cir. 2000).  "In such cases, the plaintiff must prove that [her] employer imposed 'working conditions so intolerable that a reasonable person would feel compelled to forsake [her] job rather than to submit to looming indignities." *Id.* (internal citations and quotations omitted). "Typically, the employer must either (1) take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or

divesting her of significant responsibilities, or (2) withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service." *Blackie v. Maine,* 75 F.3d 716, 725-26 (1st Cir. 1996) (internal citations omitted). "A constructive discharge also may occur when an employer effectively prevents an employee from performing [her] job." *Sanchez v. Puerto Rico Oil Co.,* 37 F.3d 712, 719 (1st Cir. 1994).

"To prove a constructive discharge, a plaintiff must offer evidence of more severe harassment than that required for a hostile work environment claim." *Luciano v. Coca-Cola Enterprises, Inc.*, 307 F.Supp.3d 308, 320 (D. Mass. 2004). "Because the test is objective, the employer's subjective intent is immaterial." *Id.* (citing *Ramos v. Davis & Geck, Inc.,* 167 F.3d 727, 732-733 (1st Cir. 1999)). "So, too, are the employee's hurt feelings, no matter how sincerely held." *Id.* (citing *Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 54 (1st Cir. 2000)). "Instead, the employee must show that her working conditions were –so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign.￠" *Id.* (citing *Marrero v. Goya of Puerto Rico, Inc.,* 304 F.3d 7, 28 (1st Cir. 2002)).

Massachusetts and federal law are in accord in defining a constructive discharge.

*The test is met if, based on an objective assessment of the conditions under which the employee has asserted [she] was expected to work, it could be found they were so difficult as to be intolerable. . . . A single, isolated act of an employer (or an agent of the employer) usually will not be enough to support a constructive discharge claim. Thus, evidence of a single unfavorable performance review or even of a demotion generally will not be deemed sufficient to support a claim . . . . In order to amount to a constructive discharge, adverse working conditions must be unusually 'aggravated' or amount to a 'continuous pattern' before the situation will be deemed intolerable.*

*GTE Products Corp. v. Stewart,* 421 Mass. 22, 34-35, 653 N.E.2d 161, 169 (1995) (citations omitted).

In support of her claims, the Plaintiff alleged the following "acts" of the Defendants that purportedly resulted in her "constructive discharge:"

- Members of management, including Defendant Keeran, "began to harass the Plaintiff." As to Defendant Keeran, the only specific allegation of her conduct is that she gave the Plaintiff "the cold shoulder." (Compl. ¶ 15).

- The Plaintiff then alleges that in September of 2012, her schedule was changed by Defendant CECAA; the Plaintiff was not notified of the change; the Plaintiff missed work and was terminated as a result. *Id.*

- The Plaintiff then asserts that she appealed her termination and "won." (Compl. ¶ 16).

- Plaintiff alleges that she was "forced to resign" on September 11, 2012, after appealing her termination.  The Plaintiff then indicates that she worked for another eleven (11) days, until September 22, 2012.  (Compl. ¶¶ 16-17).

Looking at the facts objectively, there is simply no plausible way that the Plaintiff could allege a work environment rising to the level of severity and hostility required to support a claim for constructive discharge.  The Plaintiff asserts she was "forced to resign," yet the work environment was not so intolerable to preclude her from working for another eleven (11) days. Further, if the Plaintiff's work environment was so hostile to require her to resign, why would she have appealed her termination in the first place?  Simply put, even treating all the facts as alleged by the Plaintiff as true, they simply cannot plausibly support a constructive discharge claim.

Because the Plaintiff has not established any adverse employment action[8] by the Defendants to support any of her claims, she has not stated a *prima facie* case of discrimination or retaliation and thus, these claims must be dismissed.


C.      **The Plaintiff's Claims for Sex/Gender Discrimination and Harassment and Retaliation by Defendant Keeran Under State Law (Counts XI, XII) Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).**

Under Massachusetts General Laws Chapter 151B, § 4(4), adverse actions consist of a defendant's action "to discharge, expel or otherwise discriminate against" the plaintiff. Under § 4(4A), adverse action is any action "to coerce, intimidate, threaten, or interfere with" the plaintiff. For a Title VII claim, the adverse action consists of an employer's decision to "discriminate against" the plaintiff. 42 U.S.C. § 2000e‐3(a).

In reviewing the entire Complaint, the only mention of conduct attributed to Defendant Keeran is contained in Paragraph 15 of the Complaint and alleges: "For example, the Defendant Keernan [sic] began to give the Plaintiff the cold shoulder, creating a hostile work environment for the Plaintiff." (Compl. ¶ 15). Giving someone the "cold shoulder" does not constitute adverse employment action sufficient to support a claim of either retaliation or sex/gender discrimination under Massachusetts law.[9] As such, the Plaintiff has failed to state a claim upon

---

[8] Although the Plaintiff alleges that her employment was "terminated" by the Defendant CECAA, she also pleads facts establishing that such decision was reversed and thus, the overturned termination cannot be used to establish adverse action to support these claims. Additionally, aside from the alleged termination which was overturned on appeal (although it's unclear to whom the termination was appealed or why it was overturned), there is simply no allegation of conduct that rises to the level of adverse employment action to support these claims.

[9] Courts have long held that Title VII, the federal counterpart of Chapter 151B is not "a civility code" and "requires, rather, that the level of incivility or harassment must amount to either a tangible or a constructive employment action." *Lee-Crespo v. Schering-Plough Del Caribe Inc.*, 354 F.3d 34, 37 (1st Cir. 2003); *O'Rourke v. City of Providence,* 235 F.3d 713, 729 (1st Cir. 2001); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)

which relief can be granted as to Defendant Keeran and the Court should dismiss the claims against her accordingly.

> **D.** **The Plaintiff's Claim for "Negligence – Negligent Hiring and Supervision" (Count VII) is Barred by the Exclusivity Provisions of the Massachusetts Workers' Compensation Act (Mass. Gen. Laws ch. 152). And/or the Massachusetts Fair Employment Practices Act (Mass. Gen. Laws ch. 151B) and Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6).**

Massachusetts law is well settled that claims based in common law are barred by the exclusivity provisions of the Workers' Compensation Act. *See* Mass. Gen. Laws ch. 152, § 24; *Doe v. Purity Supreme, Inc.*, 422 Mass. 563, 566, 664 N.E.2d 815, 818 (1996).  As a result, claims of negligent hiring or supervision in the workplace are barred by the Workers' Compensation Act. *See Clarke v. Kentucky Fried Chicken of California, Inc.*, 57 F.3d 21 (1st Cir. 1995) (finding former employee's negligent hiring, supervision, and retention claims were barred by preemption provision of Massachusetts Workers' Compensation Act); *Purity Supreme*, 422 Mass. at 566, 664 N.E.2d at 817 ("[I]njuries resulting from a rape or other sexual assault are 'personal injuries' within the meaning of the workers' compensation act and any tort claims seeking to recover against the employer for these injuries are barred by the exclusivity provision of the workers' compensation act").

Additionally, where a "plaintiff's common law claims are merely recast versions of her [claims] under [Massachusetts General Laws Chapter] 151B, they are barred by that statute's exclusivity provision. *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 558-59, 664 N.E.2d 808, 813 (1996).  Massachusetts General Laws Chapter 151B is the exclusive remedy for employment discrimination claims and any other claim arising out of the same set of facts and circumstances

---

(stating that the hostile work environment standards are "sufficiently demanding to ensure that Title VII does not become a 'general civility code'" (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80 (1998)).

must fail. *Id.* ("the exclusivity provision of the workers' compensation act also precludes an action against an employer for negligent and intentional infliction of emotional distress arising out of sexual harassment in the workplace"); *Charland v. Muzi Motors, Inc.,* 417 Mass. 580, 586, 631 N.E.2d 555, 559 (1994) (where Chapter 151B applies, it is exclusive remedy for employment discrimination – finding a claim under the Massachusetts Equal Rights Act barred).

It is clear that the Plaintiff's negligent hiring and supervision claims arise from the same set of facts as her claims under Chapter 151B.  Essentially, the crux of her claim is that Defendant CECAA failed to take reasonable steps to ensure that Defendant Akodo did not sexually harass the Plaintiff.  (Compl. ¶¶ 42, 47, 52, 55).

Because the Plaintiff's common law claim for "negligence – negligent hiring and supervision" is clearly barred by the exclusivity provisions of the Massachusetts Workers' Compensation Act (Mass. Gen. Laws ch. 152) and/or the Massachusetts Fair Employment Practices Act (Mass. Gen. Laws ch. 151B), her claim must fail as a matter of law and must be dismissed.

> **E.** **All of the Plaintiff's Claims Under Title VII (Counts I, II, III) Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6) as the Plaintiff Has Failed to Plead Facts Establishing that she is Entitled to Relief Under Title VII.**

Title VII of the Civil Rights Act of 1964 makes it unlawful for "an employer . . . to discriminate against any [employee] with respect to . . . sex," 42 U.S.C. § 2000e–2(a)(1), and defines "employer" as "a person . . . who has fifteen or more employees," § 2000e(b).  The Supreme Court has held that "Title VII's 15–employee threshold is an element of a plaintiff's claim for relief." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 502, 516 (2006).

Nowhere in the Plaintiff's Complaint has she established that Defendant CECAA is an employer as defined by Title VII.  The Plaintiff makes no reference to the amount of employees employed by CECAA and, as such, she has failed to establish an element of her claim and her claims under Title VII must be dismissed.

**F.      All of the Plaintiff's Claims Under Chapter 151B (Counts IV, V, VI, XI, and XII) Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6) as the Plaintiff Has Failed to Plead Facts Establishing that she is Entitled to Relief Under Chapter 151B.**

Similarly to Title VII, Massachusetts General Laws Chapter 151B makes it an unlawful practice "[f]or an employer" to discharge an individual from employment because of the sex of such individual. Mass. Gen. Laws ch. 151B, § 4. Chapter 151B defines the statutory term "employer" as not encompassing a corporation with fewer than six employees. Mass. Gen. Laws ch. 151B, § 1(5).[10]

Nowhere in the Plaintiff's Complaint has she established that Defendant CECAA is an employer as defined by Chapter 151B.  The Plaintiff makes no reference to the amount of employees employed by CECAA and, as such, she has failed to establish an element of her claim and her claims under Chapter 151B must be dismissed.

**G.      All of the Plaintiff's State Law Claims Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) (Counts IV, V, VI, VII, XI, and XII), as She has Failed to Meet Her Burden of Establishing Subject Matter Jurisdiction of this Court Over Those Claims.**

Although, in considering a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the allegations of the complaint should be construed favorably to the pleader, it is

---

[10] "The term 'employer' does not include . . . any employer with fewer than six persons in his employ . . . ." MASS. GEN. LAWS ch. 151B, § 1(5).

plaintiff's burden to prove the existence of subject matter jurisdiction. *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir. 1995), *cert. denied,* 515 U.S. 1144 (1995).

The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. § 1331, which provides for "[f]ederal-question" jurisdiction, and § 1332, which provides for "[d]iversity of citizenship" jurisdiction.   A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim "arising under" the Federal Constitution or laws. *See Bell v. Hood,* 327 U.S. 678, 681–685 (1946). A plaintiff properly invokes § 1332 jurisdiction when she presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000. *See* § 1332(a).[11]

To establish jurisdiction, the Plaintiff has indicated the following in her Complaint: "This Court has jurisdiction over the claims set forth herein, pursuant to 28 U.S.C. §§ 1331 and 1332 and otherwise. There are federal questions of law and the amount in controversy is in excess of $75,000.00. The Plaintiff's claims are brought under the Title VII of the Civil Rights Act of 1964, as amended." (Compl. ¶ 5).

While the Plaintiff has arguably established this Court's jurisdiction over her claims arising under federal law, nowhere in her Complaint has she alleged any basis whatsoever for this Court's jurisdiction over claims arising under Massachusetts state law (Counts IV, V, VI, VII, XI, and XII).   As the Plaintiff has failed to meet her burden of establishing this Court's jurisdiction over the state law claims, such claims should be dismissed.

---

[11] The Plaintiff is apparently attempting to assert diversity of citizenship jurisdiction.   Although the amount in controversy in this case may exceed $75,000, it is clear that there is no diversity of citizenship of the parties as required by § 1332. All Parties to the lawsuit are residents of Massachusetts.  (Compl. ¶¶ 1-4).

## V.   CONCLUSION

For the foregoing reasons, the Defendants CECAA and Keeran respectfully request that this Court dismiss all Counts of Plaintiff's Complaint alleged against them (Counts I, II, III, IV, V, VI, VII, XI, and XII).

Respectfully submitted,

The Defendants,

AMHERST NURSING HOME, INC.
D/B/A CENTER FOR EXTENDED CARE
AT AMHERST, KEENA KEERNAN

By their Attorney,

/s/ Meghan B. Sullivan
Meghan B. Sullivan, Esq.
Federal No.:  635265
SULLIVAN, HAYES & QUINN, LLC
One Monarch Place ó Suite 1200
Springfield, MA 01144-1200
Tel. (413) 736-4538
Fax (413) 731-8206
E-mail:  Meghan.Sullivan@sullivanandhayes.com;
         Linda.Berrios@sullivanandhayes.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of August, 2014, I electronically filed the *Defendants Amherst Nursing Home, Inc. d/b/a Center for Extended Care at Amherst's and Keena Keernan's [sic] Memorandum of Law in Support of Their Motion to Dismiss* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following registered participants:

Michael O. Shea, Esq.
Law Office of Michael O. Shea, P.C.
3 Crane Park Drive, Suite 7
Wilbraham, MA  01095
E-mail:  owenshea@aol.com

*/s/ Meghan B. Sullivan*
Meghan B. Sullivan, Esq.

**EXHIBIT 1**

# COMMONWEALTH OF MASSACHUSETTS
## COMMISSION AGAINST DISCRIMINATION

### CHARGE OF DISCRIMINATION

Docket No. 13SEMD1823
Filing Date: July 3, 2013

EEOC/HUD No. 16C-2013-02041
Violation Date(s): 08/2012-09/22/2012

### Name of Aggrieved Person

Faith Johnson
28 Sharon Lane
Feeding Hills, MA 01030

Telephone No.: (The telephone number of Complainant's attorney is (413)596-8005)

### Name of Employer/Persons Who Discriminated Against Me

Amherst Nursing Home, Inc.
Center for Extended Care at Amherst
150 University Drive
Amherst, MA 01002

Rasidi Akodo
c/o Amherst Nursing Home, Inc.
Center for Extended Care at Amherst
150 University Drive
Amherst, MA 01002



Keena Keernan
c/o Amherst Nursing Home, Inc.
Center for Extended Care at Amherst
150 University Drive
Amherst, MA 01002

Number of Employees: 50+

### Cause of Discrimination

Sexual Harassment, Sex/Gender Discrimination and Harassment, and Retaliation

### The Particulars Are:

1. I, Faith Johnson, the Complainant ("Complainant"), began my employment with the Center for Extended Care at Amherst, Amherst Nursing Home ("Respondent Company") in or about 2010 as a certified nurse's assistant ("CNA"). I performed my job responsibilities well throughout the course of my employment with the Respondent Company.

2. In or about August of 2012, I was sexually assaulted by a male CNA, the best

000001

spelling of his name I believe to be Rasidi Akodo ("Respondent Akodo") employed by the Respondent Company. The sexual assault occurred while I was in a patient's room on the Respondent Company's dementia unit.

3. I immediately reported the sexual assault to management of the Respondent Company, including Keena Keernan ("Respondent Keernan"), among others. Management of the Respondent Company led me to believe that the police would be notified and that the Respondent Akodo would be terminated.

4. However, after reporting the sexual assault to management of the Respondent Company, management, including but not limited to, the Respondent Keernan, began to harass me and ignore me and change my scheduled work hours without notifying me. Management would then accuse me of missing my scheduled shifts which was not true. In or about September of 2012, management of the Respondent Company accused me of missing one of my scheduled shifts and informed me that my employment was terminated. I always worked as I was scheduled.

5. I appealed the termination decision and won. However, management of the Respondent Company continued to harass me to try to make me quit and to accuse me of no-call/no-shows.

6. On or about September 11, 2012, I could not take the harassment and retaliation any longer and was constructively discharged and forced to quit. September 22, 2012 was my last day of employment with the Respondent Company.

7. Upon information and belief, the Respondent Akodo was never terminated from his position but rather was asked by management of the Respondent to resign from his position so that he would not lose his CNA license. Additionally, upon information and belief, the police were never notified about the incident because the Respondent Company did not want the state to come in and conduct an investigation.

8. The Respondents' conduct is in direct violation of M.G.L. c. 151B and Title VII of the Civil Rights Act of 1964, as amended, among perhaps other laws.

I am requesting that the MCAD also file this Charge of Discrimination with the EEOC and I hereby give notice that I am requesting and preserving my rights to a jury trial on all claims so triable.

I swear and affirm under the pains and penalties of perjury that I have read this Charge of Discrimination and that it is true to the best of my knowledge, information and belief.

Faith Johnson

2

000002