UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 2014-cv-30100-MGM

FAITH JOHNSON,

                    Plaintiff

v.

AMHERST NURSING HOME, INC. D/B/A
CENTER FOR EXTENDED CARE AT
AMHERST, KEENA KEERNAN and RASIDI
AKODO,

                    Defendants

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## I.   INTRODUCTION

The Plaintiff, Faith Johnson ("Plaintiff" or "Johnson" hereinafter), respectfully requests that

this Honorable Court deny the Defendants', Amherst Nursing Home, Inc. d/b/a Center for Extended

Care at Amherst and Keena Keernan (collectively referred to as "Defendants" hereinafter unless

specifically referred to as otherwise), *Motion to Dismiss* ("Defendants' Motion" hereinafter). In the

alternative, the Plaintiff requests that the Court convert the Defendants' Motion into one falling under

Fed. R. Civ. P. 56, and postpone hearing on said Rule 56 motion until the Parties have conducted

discovery and depositions and have filed supplemental memoranda. See Fed. R. Civ. P. 56(e) and (f).

The Defendants' Motion should be denied for the following reasons: (1) the Plaintiff has

complied with Massachusetts notice-pleading and has put the Defendants on sufficient notice of her

intended claims; (2) the Plaintiff's Complaint satisfies the standard set forth by the Supreme Court in

*Bell Atl. Corp. v. Twombly*; and (3) the Defendants are raising matters and issues well outside the four

corners of the Plaintiff's Complaint and such matters require information which can only be obtained

during the discovery phase of this litigation.  While the Plaintiff believes that her original Complaint and Jury Demand is sufficiently pled to withstand a motion to dismiss, she nevertheless has moved to amend her Complaint and has attached a First Amended Complaint and Jury Demand to said Motion which is being filed simultaneously with this Memorandum.

## II.   STATEMENT OF RELEVANT SUBSTANTIVE FACTS

The Plaintiff began her employment with the Defendant CECAA in or about 2010 as a per-diem (full-time) certified nurse aide ("CNA"). Compl. ¶ 7; Amended Compl. ¶ 7. The Defendant CECAA employs more than twenty employees. Amended Compl. ¶ 8.  The Plaintiff worked on the Defendant CECAA's Dharma Unit. The Dharma Unit is a specialized unit dedicated to the care of residents suffering from Alzheimer's disease or dementia. Compl. ¶ 8; Amended Compl. ¶ 9. The Plaintiff performed her job responsibilities well throughout the course of her employment with the Defendant CECAA. Compl. ¶ 9; Amended Compl. ¶ 10.

On or about August 22, 2012, while the Plaintiff was cleaning up a resident's room, the Plaintiff was sexually assaulted by the Defendant Akodo, a male CNA employed by the Defendant CECAA. Compl. ¶ 10; Amended Compl. ¶ 11. The Defendant Akodo attacked the Plaintiff from behind and restrained the Plaintiff by wrapping his arm around the Plaintiff's stomach.  Although the Plaintiff fought back, physically trying to break free and continuously yelling for the Defendant Akodo to stop, the Defendant Akodo proceeded to attempt to rape the Plaintiff. Compl. ¶ 11; Amended Compl. ¶ 12. The Plaintiff, eventually, was able to break free from the Defendant Akodo and ran out of the resident's room. Compl. ¶ 12; Amended Compl. ¶ 13.

The Plaintiff reported the sexual assault to management of the Defendant CECAA, including the Defendant Keeran, Manager of the Defendant CECAA's Dharma Unit as well as Joanne Lampron, Director of Nursing, among other management. Compl. ¶ 13; Amended Compl. ¶ 14.  In response to the Plaintiff's report of sexual assault, management of the Defendant CECAA misled the Plaintiff into believing that the police would be notified of the same and that the Defendant Akodo would be

terminated. Management also indicated that the Plaintiff's report would be kept confidential. Compl. ¶ 14; Amended Compl. ¶ 15.

Shortly thereafter, employees and management of the Defendant CECAA including, but not limited to, the Defendant Keeran, began to harass and retaliate against the Plaintiff. Compl. ¶ 15; Amended Compl. ¶ 16. When the Plaintiff handed her written statement of the sexual assault to the Defendant Keeran and Ms. Lampron, Ms. Lampron took the statement, tossed it aside and made a comment to the effect of "well, we don't need this anymore because you're being terminated." Ms. Lampron informed the Plaintiff that she was being terminated due to an alleged no-call/no-show. Compl. ¶ 15; Amended Compl. ¶ 17.

Although the Plaintiff was able to refute the reasons given for the termination of her employment successfully, management of the Defendant CECAA continued to harass the Plaintiff thereafter in an effort to force the Plaintiff to resign from her employment. Compl. ¶ 16; Amended Compl. ¶ 18. For example, the Defendant Keeran harassed the Plaintiff by not responding to the Plaintiff when she asked her a question and seemingly going out of her way to not acknowledge the Plaintiff at all. Compl. ¶ 15; Amended Compl. ¶ 19. On other occasions, in or about September of 2012, management of the Defendant CECAA changed the Plaintiff's set work schedule without notifying her first which led to the Plaintiff missing a scheduled work shift. Compl. ¶ 15; Amended Compl. ¶ 20.

Although the Plaintiff's complaint of the sexual assault was supposed to be kept confidential by management of the Defendant CECAA, upon the Plaintiff's return to work, the Plaintiff's coworkers were openly discussing the sexual assault. The Plaintiff's coworkers harassed her because of the sexual assault. For example, several coworkers would call the Plaintiff a "liar" and say that she had made up the sexual assault.  Several coworkers, when the nurses assigned work schedules at the beginning of the shift, would refuse to work with the Plaintiff making comments such as "I don't want to fucking work with her." On one occasion, another CNA, carrying a tray of food including a cup of hot coffee,

purposefully collided with the Plaintiff while passing in the hallway causing the tray to spill over the Plaintiff.  There are other examples as well. Amended Compl. ¶ 21.

The foregoing acts of harassment and retaliation created a hostile work environment for the Plaintiff which continued until the Plaintiff's last day of employment at the Defendant CECAA on September 22, 2012. Amended Compl. ¶ 22.  The Plaintiff reported the harassment to management of the Defendant CECAA in an effort to remedy the same within the last few days preceding her constructive discharge of employment on September 11, 2012. The Plaintiff first requested that she not be scheduled to work on the Dharma Unit anymore and then later requested that she be able to switch to a regular position on another unit.  However, management of the Defendant CECAA denied both of the Plaintiff's requests. Amended Compl. ¶ 23.

Within a few days of the constructive discharge of Johnson's employment, a supervisor informed Johnson that she needed to watch her back because the Defendant Keeran and Ms. Lampron wanted to get rid of her. Amended Compl. ¶ 24.

On or about September 11, 2012, due to the hostile work environment and the harassment and retaliation itself, the Plaintiff was forced to resign from her employment with the Defendant CECAA and was constructively discharged. Compl. ¶ 17; Amended Compl. ¶ 25. The Plaintiff's last day of employment at the Defendant CECAA was on or about September 22, 2012. Compl. ¶ 18; Amended Compl. ¶ 26.

In or about July of 2013, the Plaintiff was informed of a communication with a manager which revealed that the Defendant Akodo had never been terminated from his employment at all but, rather, had been asked to resign so that he would not lose his nurse's aide certification. Compl. ¶ 19; Amended Compl. ¶ 27.  Upon information and belief, the Defendant Akodo sexually assaulted other individuals at the Defendant CECAA which went unreported and the Defendant Akodo is currently employed at another long-term nursing facility in the area. Compl. ¶ 20; Amended Compl. ¶ 28. To date, and to the Plaintiff's knowledge, the Defendant CECAA never notified the police of the sexual

assault. Compl. ¶ 21; Amended Compl. ¶ 29.

## III.   RELEVANT PROCEDURAL BACKGROUND

As discussed above, Johnson was misled into believing that the police had been notified of the sexual assault and that the Defendant Akodo had been terminated from his employment for the same. Compl. ¶ 14; Amended Compl. ¶ 15. However, in or about July of 2013, Johnson was informed of a communication with a manager which revealed that the Defendant Akodo had never been terminated from his employment at all but, rather, had been asked to resign so that he would not lose his nurse's aide certification. Compl. ¶ 19; Amended Compl. ¶ 27.  It was at this point that Johnson sought and retained counsel and a charge of discrimination was filed with the Massachusetts Commission Against Discrimination ("MCAD") that same day, on July 3, 2013.

## IV.   ARGUMENT

### A.   The Defendants' Motion Must Be Denied Where The 300-Day Filing Requirement For Johnson's Claims Of Sexual Harassment And Sex/Gender Discrimination And Harassment Are Subject To Equitable Modification.

The Defendants argue that Counts I, II, IV and V of Johnson's Complaint should be dismissed where the sexual assault on her by the Defendant Akodo occurred days outside of the 300-day window preceding Johnson's filing of her charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") on July 3, 2013.  This argument fails, however, where the 300-day filing requirement is not jurisdictional and Johnson's claims of sexual harassment and sex/gender discrimination and harassment (in violation of Title VII and Chapter 151B) are appropriate for equitable modification.  Therefore, the Court must deny the Defendants' Motion.

Both federal and state provisions require that an administrative charge be filed within 300 days of the unlawful employment practice. Title VII, 42 U.S.C. § 2000e–5(e)(1) (2006); Mass. Gen. Laws ch. 151B, § 5 (2011). In Massachusetts, the MCAD has a work sharing agreement with the Equal Employment Opportunity Commission ("EEOC") so that the filing of an administrative charge with one agency will automatically result in a filing of the same with the other agency. *EEOC v. Green*, 76

F.3d 19, 21 (1st Cir. 1996).  The 300-day filing requirement allows the federal and/or state agency the

opportunity to investigate and settle a plaintiff's claims as well as to serve as a notice of a potential

lawsuit for defendants. *Carter v. Comm'r of Corr.,* 43 Mass. App. Ct. 212, 217 (1997). *See also*,

*Lattimore v. Polaroid Corp.,* 99 F.3d 456, 464 (1st Cir. 1996). Importantly, the 300-day filing

requirement is not a jurisdictional prerequisite but, instead, is analogous to a statute of limitations

which is "subject to equitable modification." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393

(1982); *Kale v. Combined Ins. Co. of America*, 861 F.2d 746, 752 (1st Cir. 1988).

The purpose of both Title VII and Chapter 151B is to rid the work place of unlawful

discrimination, hence, the filing requirement is "to be interpreted broadly to effect the law[s'] remedial

purposes." *Ruffino v. State Street Bank and Trust Co.*, 908 F.Supp. 1019, 1037 (1995); *Zipes,* 455 U.S.

at 392-398. Consequently, exceptions to the filing requirements such as equitable estoppel and

equitable tolling under both Title VII and Chapter 151B exist. *See* Massachusetts Commission Against

Discrimination Guidelines, Sexual Harassment in the Workplace, § 7; *Zipes*, 455 U.S. at 393. In

addition to equitable estoppel and tolling, the filing requirement will not bar a complainant in

circumstances where the alleged conduct was of a continuing nature. *Id*. Such exceptions to the filing

requirement were developed among the courts in those cases, such as here, were it is necessary "to

prevent an injustice that might otherwise be worked by a literal application of the statute." *Reeb v.

Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 927 (5th Cir. 1975).

### 1.  <u>Continuing Violation</u>

The Defendants argue that Johnson's claims of sexual harassment and sex/gender

discrimination and harassment are time-barred due to the 300-day filing requirement.  However, the

300-day filing requirement will not bar claims based on the fact that some of the alleged conduct

occurred outside of the 300 days prior to filing but continued into the preceding 300 days (i.e. a

continuing violation).  A continuing violation can occur in two forms. One is a "systemic" violation,

where an ongoing discriminatory policy or practice exists and continues into the filing period. *See*

*Jensen v. Frank,* 912 F.2d 517, 523 (1st Cir. 1990) ("so long as the policy or practice itself continues into the limitation period, a challenger may be deemed to have filed a timely complaint"). The second type of continuing violation is of the "serial" form, where a series of related acts together form a discriminatory pattern of conduct. It is this form of the continuing violation that applies in cases of sexual harassment. *See* Massachusetts Commission Against Discrimination Sexual Harassment in the Workplace Guidelines, § 7.

As interpreted by both state and federal courts, the continuing violation exception recognizes that some claims of discrimination involve a series of related events that must be viewed in their totality in order to assess adequately their discriminatory nature and impact. *See O'Rourke v. City of Providence,* 235 F.3d 713, 732 (1st Cir. 2001). Sexual harassment is usually a cumulative process rather than a one-time event, and a plaintiff may be unable to appreciate that he or she is being discriminated against until he or she has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern. The test for whether a continuing violation exists differs between state and federal court.

### i.     Chapter 151B

After years of confusion between state and federal jurisprudence in this area, the Supreme Judicial Court in *Cuddyer v. Stop & Shop Supermarket Co.,* clarified the standard for a continuing violation under Chapter 151B, setting out a three-part test:  First, the employee must establish that at least one instance of harassment, discrimination and/or retaliation occurred within the limitations period. 434 Mass. 521, 533 (2001). The conduct within the limitations period need not, standing alone, have created a hostile work environment. *Id.* Second, the conduct within the limitations period must be substantially linked to the earlier, untimely conduct by similarity, repetition, and continuity. *Id.*(it must be shown that the timely act "substantially relates to earlier incidents of abuse, and substantially contributes to the continuation of a hostile work environment, such that the incident anchors all related incidents, thereby making the entirety of the claim for discriminatory conduct timely"). Third, any

delay by the employee in filing his or her charge must not be unreasonable. Thus an employee may

seek damages for conduct occurring outside the limitations period unless the employee considers his or

her situation to be "hopeless," i.e., that the employee "knew or reasonably should have known that her

work situation was pervasively hostile and unlikely to improve, and, thus, a reasonable person in her

position would have filed a complaint with the MCAD before the statute ran on that conduct."

*Cuddyer,* 434 Mass. at 539, 540-41. If the court finds the employee's failure to file his or her charge

earlier was unreasonable, the employee may still file a claim as to the timely events and use the

untimely events as evidence.

ii.    <u>**Title VII**</u>

In 2002, the U.S. Supreme Court, in *National Railroad Passenger Corp. v. Morgan,* 536 U.S.

101 (2002), set forth the continuing violation rule for a hostile environment case under Title VII.  The

Court recognized that all the individual actions that make up a hostile environment are part of one

single unlawful employment practice, even if the actions took place over the course of years.

Therefore, as long as any one incident falls within the filing period, all the related conduct is timely

and can be part of a timely filed sexual harassment claim. The Court explained:

> Given, therefore, that the incidents comprising a hostile work environment are
> part of one unlawful employment practice, the employer may be liable for all acts
> that are part of this single claim. In order for the charge to be timely, the
> employee need only file a charge within 180 or 300 days of any act that is part of
> the hostile work environment.

*Morgan,* 536 U.S. at 118.  In determining whether an incident is an act of sexual harassment, the First

Circuit takes a broad view and may encompass not just conduct that is sexual in nature, but also

"incidents of nonsexual conduct — such as work sabotage, exclusion, denial of support, and

humiliation — [which] can in context contribute to a hostile work environment." *O'Rourke v. City of*

*Providence,* 235 F.3d 713, 730 (1st Cir. 2001).

In the instant case, Johnson's claims of sexual harassment are based upon a hostile work

environment theory of recovery.  In *Morgan*, the Supreme Court explained:

> A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e–5 (e)(1).  The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).  Thus, the sexual assault on Johnson by the Defendant Akodo is not necessarily in and of itself one unlawful act.  Instead, the sexual assault and the immediate subsequent incidents of discrimination and harassment that immediately followed Johnson's reporting of the sexual assault to management of the Defendant CECAA up until Johnson's last day of employment on September 22, 2012, taken together, constitute as one "unlawful employment practice."  Where Johnson's charge of discrimination was filed on July 3, 2013, 315 days after the sexual assault on August 22, 2012, Johnson's claims are not time-barred and the Defendants' Motion must be dismissed.

## 2.  **Equitable Modification**

Equitable modification may be applied in circumstances where a plaintiff is reasonably misled by the defendant/employer and/or is "excusably ignorant" of the administrative filing deadline. *See* Massachusetts Commission Against Discrimination Guidelines, Sexual Harassment in the Workplace § 7; *Zipes*, 455 U.S. at 393 (1982); *Kale,* 861 F.2d at 752.  If such circumstances are found to exist, the time period for filing an administrative charge is, generally, "triggered once the [plaintiff] knows or should know that he or she is being discriminated against." *Wheatley v. American Tel. & Tel. Co.*, 418 Mass. 394, 398 (1994)(citing *McConnell v. General Tel Co. of Cal.*, 814 F.2d 1311, 1317 (9th Cir. 1987)).

### i.  **Equitable Estoppel**

Equitable estoppel occurs in circumstances where a plaintiff, although aware of their rights, does not file a timely administrative charge due to a reasonable reliance on their employer's

misleading representations and/or conduct. *See* Massachusetts Commission Against Discrimination Guidelines, Sexual Harassment in the Workplace § 7; *Zipes v. TWA, Inc.*, 455 U.S. 385, 393 (1982); *Kale,* 861 F.2d at 752. In order to invoke equitable estoppel, a plaintiff must show either: (1) the employer's purposefully deceptive actions; or (2) the employer's constructive knowledge of its deceptive actions. *Kale*, 861 F.2d at 752. However, a plaintiff's "hope for rehire, transfer, promotion, or a continuing employment relationship … [alone] cannot toll the statute absent some employer conduct likely to mislead an employee into sleeping on his rights." *Price v. Litton Business Systems, Inc.,* 694 F.2d 963, 965-966 (4th Cir.1982).

In *Reeb v. Economic Opportunity Atlanta, Inc.*, the Fifth Circuit held that defendant was equitably estopped from invoking the statute of limitations defense to plaintiff's claims where plaintiff had been purposefully misled as to the reasons surrounding the termination of her employment by her employer when she was informed that her employment was being terminated due to financial reasons which plaintiff accepted as true. Six months later, however, plaintiff learned that her position had been subsequently filled by a less qualified male. 516 F.2d 924 (5th Cir. 1975).

In the instant matter, Johnson maintains that she was misled by management of the Defendant CECAA into believing that the sexual assault was reported to the police and that the Defendant Akodo was terminated as a result of the sexual assault which consequently should have led to the revocation of his nurse's aide certification. Compl. ¶ 14; Amended Compl. ¶ 15. Certainly, Johnson's reliance that the Defendant Akodo had been terminated from his employment was reasonable given that the Defendant Akodo did not return to work after Johnson reported the sexual assault on August 24, 2012. That, but for these misrepresentations, Johnson would have pursued her rights much earlier than she did. Indeed, after learning that the Defendant Akodo had not been terminated and was likely working in another local nursing home, Johnson immediately sought counsel.

### ii.  **Equitable Tolling**

When presented with the question of whether equitable tolling of the 300-day filing

requirement is appropriate in a particular situation, the First Circuit has stated that the following factors

should be considered:

> (1) lack of actual notice of filing requirement; (2) lack of constructive
> knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4)
> absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in
> remaining ignorant of the notice requirement.

*Kale v. Combined Ins. Co. of America*, 861 F.2d 746, 752 (1st Cir. 1988)(quoting *Andrews v. Orr,* 851

F.2d 146, 151 (6th Cir.1988)).[1]  In addition to the foregoing, the court must also consider whether or

not a plaintiff was represented by counsel during the applicable statute of limitations and, if so, "he or

she is charged with constructive knowledge of all procedural requirements." *Id*. at 753. Here, Johnson

was not represented by counsel before the actual date of her filing of the EEOC/MCAD Charge.

In the instant matter, Johnson, after reporting the sexual assault to management of the

Defendant CECAA, was misled into believing that the incident was going to be reported to the police

and that the Defendant Akodo was going to be terminated for the same. In response to her report of

sexual assault, and instead of informing Johnson of her rights, Ms. Lampron instructed Johnson to go

home and write a written statement concerning the sexual assault.  Interestingly, Ms. Lampron refused

to allow Johnson to write the statement during the meeting or on a formal complaint form and, instead,

insisted that Johnson go home and write the statement on "computer paper." Ms. Lampron further

instructed Johnson to turn the statement in to management when she returned for her next scheduled

shift, which Johnson did.  Ms. Lampron and the Defendant Keeran immediately proceeded to terminate

Johnson's employment.  Johnson was falsely accused of having no call/no showed for a shift but was

able to refute management's reasons for termination and, so, management was unable to terminate

Johnson's employment at that time.

---

[1] When determining whether or not the doctrine of equitable tolling should be applied, the absence of prejudice on a
defendant should only be considered after "a factor that might justify tolling is identified, it is not an independent basis for
invoking the doctrine...." *Kale* at 753(quoting, *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984).

Despite the subsequent harassment and retaliation against Johnson thereafter by her coworkers and management of the Defendant CECAA (continuing up until the final day of Johnson's employment on September 22, 2012) Johnson believed that the police had been notified of the sexual assault and that the Defendant CECAA had terminated the Defendant Akodo's employment for the same. Compl. ¶¶ 14, 15; Amended Compl. ¶¶ 15-22.  It was not until almost one year later, in or about July of 2013, that Johnson was informed of a communication with a manager at the Defendant CECAA which revealed that the Defendant Akodo had never been terminated from his employment at all.  Rather, Johnson was informed that the Defendant Akodo had been asked to resign so that he would not lose his nurse's aide certification and was working in another local nursing home. It was at this point that Johnson sought and retained counsel and a charge of discrimination was filed with the MCAD that same day.

Given the foregoing, equitable modification is clearly appropriate in the instant matter where Johnson was, indeed, misled and purposefully deceived by the Defendants to believe, not only that the police would be contacted, but also that the Defendant Akodo's employment would be terminated in response to her report of sexual assault. Compl. ¶¶ 14; Amended Compl. 15.  Moreover, Johnson, not knowing the applicable filing deadline, after learning that the Defendants had not terminated the Defendant Akodo, immediately retained counsel and her charge of discrimination was filed with the MCAD that day. Clearly, to deny Johnson the possibility of recovery against the Defendants for the sexual assault that she endured while working at the Defendant CECAA on the sole basis that it occurred fifteen days outside of the filing requirement would be unjust, particularly where there are here many anchoring instances of harassment/retaliation within the 300-day filing requirement. Therefore, in order to avoid such injustice, the Court must deny the Defendants' Motion.

**B.** **The Court Must Deny The Defendants' Motion Where Johnson Has Satisfied The Twombly/Iqbal Pleading Standard Sufficient To Withstand A Motion To Dismiss.**

    **1.** **Motion to Dismiss – Legal Standard.**

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff[ ]. *Gargano v. Liberty Intern. Underwriters*, 572 F.3d 45, 48 (1st Cir. 2009) (citing *Fitzgerald v. Harris*, 549 F.3d 46, 52 (1st Cir. 2008)). Moreover, "[t]he general rules of pleading require 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (citing Fed.R.Civ.P. 8(a)(2)). "This short and plain statement need only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Id.* at 48-9 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Plaintiff's facts must "contain enough meat to support a reasonable expectation that an actionable claim *may* exist." *Andrew Robinson Int'l v. Hartford Fire Ins.*, 547 F.3d 48, 51 (1st Cir. 2008) (emphasis supplied) (citing *Bell Atlantic Corp. v. Twombly* and *Morales-Tanon v. P.R. Elec. Power Auth.*, 524 F.3d 15, 18 (1st Cir. 2008)).

The U.S. Supreme Court's decision in *Twombly* requires that a complaint allege "a plausible entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 559. The "plausible entitlement to relief" standard replaces the standard established in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007). Despite this change in the old standard, *Twombly* makes clear that "[a]sking for plausible grounds [ ] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the alleged illegal conduct]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 556. Moreover, the Court in *Twombly* makes note that its "analysis does not run counter to *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), which held that 'a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of

13

discrimination.'"   *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 569-570.  The *Twombly* decision does

not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is

plausible on its face."  *Id*. at 570.

It is fundamental that under notice-pleading requirements, the burden on the Plaintiff is

minimal, requiring only that she aver sufficient information to identify for the Defendants the claims

against them and the basis upon which she is entitled to relief. Fed. R. Civ. P. 8(a)(1).  *See also, Bell v.*

*Mazza*, 394 Mass. 176, 184 (1985).  In Count I, the Plaintiff alleges sexual harassment against the

Defendant CECAA (Title VII of the Civil Rights Act of 1964, as amended ("Title VII")).  In Count II,

the Plaintiff alleges sex/gender discrimination and harassment against the Defendant CECAA (Title

VII).  In Count III, the Plaintiff alleges retaliation against the Defendant CECAA (Title VII).  In Count

IV, the Plaintiff alleges sexual harassment against the Defendant CECAA (M.G.L. c. 151B).  In Count

V, the Plaintiff alleges sex/gender discrimination and harassment against the Defendant CECAA

(M.G.L. c. 151B).  In Count VI, the Plaintiff alleges retaliation against the Defendant CECAA (M.G.L.

c. 151B).  In Count VII, the Plaintiff alleges negligent hiring and supervision against the Defendant

CECAA. In Count XI, the Plaintiff alleges sex/gender discrimination and harassment against the

Defendant Keeran (M.G.L. c. 151B). In Count XII, the Plaintiff alleges retaliation against the

Defendant Keeran (M.G.L. c. 151B).

Retaliation is a separate cause of action under both M.G.L. c. 151B and Title VII.  *See* 42

U.S.C. § 2000e-3(a); M.G.L. c. 151B, § 4. A plaintiff need not prove an underlying case of

discrimination to prevail on retaliation claims. *See Noviello v. City of Boston*, 398 F.3d 76 (1st Cir.

2005).

As outlined in Section II above, the Plaintiff has pled sufficient facts in her original Complaint,

and certainly in her Amended Complaint, which clearly demonstrate a reasonable expectation that

actionable claims exist or *may* exist under both Title VII and M.G.L. c. 151B as well as a negligent

hiring and supervision theory of recovery, which is all that is required under the notice-pleading

doctrine as modified by *Twombly* and interpreted by the First Circuit. *See also*, *Sisco v. DLA Piper LLP*, 833 F.Supp.2d 133, 140 (D.Mass.2011). "In the employment discrimination context, it is not necessary for a plaintiff to plead facts supporting each element of a claim, provided that whatever facts are plead allow the Court to plausibly infer liability." *Id.* (noting that, "dismissal … at this early stage is rare … in employment cases.")(internal quotations omitted). *See also*, *Anderson v. Found. for Advancement, Educ. & Employment of Amer. Indians*, 155 F.3d 500, 505 (4th Cir. 1998) (explaining that notice pleading requires a complaint to be read liberally in favor of the plaintiff).

The Plaintiff's Complaint and Amended Complaint allege that Johnson was sexually assaulted by the Defendant Akodo on or about August 22, 2012 when the Defendant Akodo attempted to rape her in a resident's room during work. Compl. ¶¶ 10-12; Amended Compl. ¶¶ 11-13. Johnson reported the sexual assault to management of the Defendant CECAA and provided them with a written statement outlining the same. Compl. ¶ 13; Amended Compl. ¶¶ 14, 17.  Management of the Defendant CECAA misled Johnson into believing that the police would be notified about the sexual assault and that the Defendant Akodo would be terminated from his employment. Compl. ¶ 14; Amended Compl. ¶ 15. That after Johnson reported the sexual assault, Johnson was harassed and retaliated against by management of the Defendant CECAA.  In fact, the same day that Johnson went to turn in her written statement regarding the sexual assault, management attempted to terminate Johnson's employment for false reasons which Johnson was able to refute. Compl. ¶ 15; Amended Compl. ¶¶ 17-18. Johnson was also harassed by coworkers regarding the sexual assault. Compl. ¶¶ 15-16; Amended Compl. ¶¶ 16-22. Despite Johnson's reports to management of the hostile work environment and Johnson's attempts to remedy the same by requesting to work on a different unit, management denied Johnson's requests. Consequently, it was only a matter of weeks that Johnson was constructively discharged from her employment. Compl. ¶ 17-18; Amended Compl. ¶¶ 22-26.  Thus, the Plaintiff can establish a causal connection between the adverse employment actions and the protected activity, as the alleged retaliatory acts are close in time to the Plaintiff's protected activity. *E.g., Mole v. University of*

*Massachusetts*, 442 Mass. 582, 596 (2004), citing *Chungchi Che v. Massachusetts Bay Transp. Auth.*, 342 F.3d 31, 38 (1st Cir. 2003) (despite passage of eleven months between filing of claim and demotion of plaintiff, "[e]vidence of discriminatory or disparate treatment in the time period between the protected activity and the adverse employment action can be sufficient to show a causal connection"); citing *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 895 (3rd Cir. 1993) (ongoing "pattern of antagonism" sufficient to establish causal link between employee's filing of grievance and his discharge two years later); and also citing *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 329 (10th Cir.), cert. denied, 518 U.S. 1019 (1996) (lack of close temporal proximity not fatal to retaliatory discharge claim if "pattern of retaliatory conduct begins soon after [protected activity] and only culminates later in actual discharge").

It was not until July of 2013, that Johnson was informed of a communication with a manager which revealed that the Defendant Akodo had never been terminated from his employment at all but, rather, had been asked to resign so that he would not lose his nurse's aide certification.  Compl. ¶ 19; Amended Compl. ¶ 27. It was at this point that Johnson sought and retained counsel and a charge of discrimination was filed with the MCAD that same day, on July 3, 2013. See Defs.' Exhibit A.  Upon information and belief, the Defendant Akodo sexually assaulted other individuals at the Defendant CECAA which went unreported and the Defendant Akodo is currently employed at another long-term nursing facility in the area. Compl. ¶ 20; Amended Compl. ¶ 28.

Whether the Plaintiff has viable claims is a question of law and fact which will require the Court to consider matters outside of the pleadings. The Plaintiff should be allowed the opportunity to conduct discovery and depositions of witnesses in this matter in an effort to prove his claims against the Defendants. The Defendants are raising matters and issues well outside the four corners of the pleadings and have failed to meet *their burden* of showing that the Plaintiff's claims are not plausible and that he cannot show that he is entitled to relief.

C. **Johnson Was Constructively Discharged From Her Employment At The Defendant CECAA.**

To prove constructive discharge, a plaintiff must establish that the situation was so intolerable that a reasonable person in his or her position would have felt compelled to resign. *See GTE Products Corp. v. Stewart*, 421 Mass. 22, 34, 653 N.E.2d 161, 168 (1995); *Levesque v. Quality Brands Liquor*, 19 M.D.L.R. 154, 156 (1997). The same evidence necessary to prove sexual harassment will often establish the elements of constructive discharge. *See, e.g.*, *Levesque*, 19 M.D.L.R. at 156; *Choukas v. Ocean Kai Restaurant*, 19 M.D.L.R. 169, 171 (1997).

As discussed in detail above, Johnson reported the sexual assault to management of the Defendant CECAA but to no avail. Instead of reporting the sexual assault to the police and terminating the Defendant Akodo's employment, management of the Defendant CECAA responded to Johnson's report of sexual assault by terminating her employment. Compl. ¶ 15; Amended Compl. ¶ 17.  Indeed, it was the same meeting where Johnson turned in her written statement regarding the sexual assault to the Defendant Keeran and Ms. Lampron that Ms. Lampron stated that they no longer needed Johnson's written statement anymore because she was being terminated. *Id*. To make matters worse, despite the fact that Johnson was able to refute the Defendants' reasons for terminating her employment, management of the Defendant CECAA proceeded to harass and retaliate against Johnson and permitted other coworkers to harass Johnson regarding the sexual assault when, despite Johnson's complaints of the hostile work environment, refused to allow her to work and/or transfer to another unit. Amended Compl. ¶ 23.

In hostile environment cases, the employer has a duty to investigate and promptly and adequately remedy the situation. *College-Town Div. of Interco, Inc. v. MCAD*, 400 Mass. 156, 167-68, 508 N.E.2d 587, 594 (1987).  In the instant case, the Defendants failed to adequately investigate the Plaintiff's complaints or adequately remedy the situation, and the Plaintiff was constructively discharged from her employment following the reporting of sexual harassment and resisting and reporting of the subsequent harassment and retaliation.

Importantly, of constructive discharge claims in cases of sexual harassment, the MCAD has actually opined that an employee "must pursue *reasonable* alternatives to quitting" which "is a *fact-specific* inquiry." *MCAD Guidelines*, Sec. VIII.  Moreover, while according to the MCAD it may be more difficult to establish constructive discharge where an employer has internal complaint procedures and the employee has not pursued those, one is not precluded from claiming that she has been constructively discharged due to sexual harassment. *See id.*; *see also Reed v. MBNA Marketing Sys.*, 333 F.3d 27, 36 (1st Cir. 2003)(finding that an employee can claim constructive discharge even when employee did not complain pursuant to employer's sexual harassment policy).

Either way, in the instant case, the Plaintiff's Complaint and Amended Complaint clearly establish that Johnson attempted to remedy the situation by reporting, not only the sexual assault, to management of the Defendant CECAA but also the subsequent harassment.  Johnson was denied the ability to work on and/or to transfer units, which she attempted to do to avoid resigning from her employment. Amended Compl. ¶ 23.

## D. The Defendant Keeran May Be Held Strictly Liable For The Sexual Assault Of Johnson By The Defendant Akodo Under Chapter 151B.

Johnson's Complaint and Amended Complaint allege that, upon information and belief, the Defendant Akodo had prior history of sexually assaulting other female employees at the Defendant CECAA and that management, including the Defendant Keeran, had been aware of the same. Of course, there is strict liability under Chapter 151B for the discriminatory actions and conduct of managers and supervisors, regardless of notice to the Defendant.  *College-Town Division of Interco, Inc., v. MCAD*, 400 Mass. 156, 165-167 (1987); *Holt v. Minuteman Flames Minor Hockey Ass'n*, 22 MDLR 373, 375 (2000); *Miller v. Berkshire Hospitality Corp.*, 22 MDLR 321, 324 (2000); *Rowe v. American Paper Products, Inc.*, 22 MDLR 279, 282 (2000); *Messina v. Araserve, Inc.*, 906 F. Supp. 34, 37 (D. Mass. 1995); *LeClerc v. Interstate Distrib. Div. of Hudson News Co.*, 2000 WL 33170694 at *6 (Mass. Super. Ct. Aug. 31, 2000).  Therefore, Johnson should be allowed the opportunity to conduct discovery and depositions of witnesses in this matter in an effort to prove her claims against the

Defendant Keeran.

**E. The Defendant CECAA Employs More Than Fifteen Employees And, Therefore, Johnson Is Entitled To Relief Under Chapter 151B And Title VII.**

As discussed above, Johnson filed her claims against the Defendants with the MCAD on July 3, 2013.  In so filing, Johnson's claims were dually filed with the EEOC. Johnson's MCAD charge indicated that she was employed by the Defendant CECAA and that the Defendant CECAA employed more than twenty employees.  Thus, Johnson established that the Defendant CECAA was an employer for purposes of Title VII and Chapter 151B at the administrative stage of the instant matter. *See* Defendants' Exhibit A.  Therefore, the Defendant CECAA is an employer as defined by both Title VII and Chapter 151B and Johnson has established that she is entitled to relief under both statutes.

**F. Johnson's Claim For Negligence – Negligent Hiring And Supervision (Count VII) Is Not Barred.**

The Defendants argue that the Plaintiff's claim of negligent hiring and supervision against the Defendant CECAA are barred by the exclusivity provisions of the Worker's Compensation Act. Yet, the Plaintiff's additional claims are not brought pursuant to the Worker's Compensation Act but, rather, Chapter 151B and are therefore not barred. *See Comey v. Hill*, 387 Mass. 11, (1982). "Although G.L. c. 151B is a comprehensive statute in the sense that it covers various acts and practices where the possibility for discrimination is evident, we do not view the statute as tending to narrow or eliminate a person's common law rights where applicable. The statute broadens existing remedies rather than requiring resort to it as exclusive of all other remedies." *Comey v. Hill*, 387 Mass. 11, 20 (1982)

**G. This Court Has Pendent Jurisdiction Over The Plaintiff's State Law Claims.**

The Defendants argue that the Plaintiff has not established, in her Complaint, this Court's jurisdiction over her state law claims. This argument fails, however, where the Plaintiff's Complaint, and Amended Complaint, clearly establish that Johnson "is entitled to relief" under federal and state law as required by Fed. R. Civ. P Rule 8(a) and that the same "derive from a common nucleus of operative facts." *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 1138 (1966).  Other

factors considered include, but are not necessarily limited to, judicial economy, fairness, comity and convenience. *Id*. at 1139. The final consideration relates to the construction of the state and federal statutes. *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).

The Plaintiff's Complaint and Amended Complaint contain nine causes of action (Counts I-VII, XI and XII) against the Defendants. Specifically, the Plaintiff's Complaint and Amended Complaint allege that the Defendant Akodo sexually assaulted Johnson when he attempted to rape her in a resident's room during work on August 22, 2012.  After Johnson reported the sexual assault to management of the Defendant CECAA and provided them with a written statement, Johnson was subjected to harassment and retaliation by coworkers and management of the Defendant CECAA. That despite Johnson's complaints and attempts to correct the same, Johnson was forced to resign from her employment and was constructively discharged in a matter of weeks following her filing of written statement of the assault. Johnson's Complaint and Amended Complaint also allege that Johnson had been misled by management of the Defendant CECAA into believing that the Defendant Akodo would be terminated, the police notified in response to her report of sexual assault and her complaint kept confidential.  But that, in or about July of 2013, Johnson learned that management had not terminated the Defendant Akodo at all but, rather, had asked the Defendant Akodo to resign from his employment so that he would not lose his nurse's aide certification and that the Defendant Akodo was working in another nursing home facility in the area.

Title VII is the Federal analogue to Chapter 151B. *Lopez v. Commonwealth*, 463 Mass. 696, 703 n.8 (2012)(citing *College–Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination,* 400 Mass. 156, 163, 508 N.E.2d 587 (1987)). Thus, the standards applied to a hostile work environment claim arising from gender-based discrimination under Title VII "are essentially 'analogous'" to those applied under Chapter 151B.  *Bourbeau v. City of Chicopee*, 445 F.Supp.2d 106 (D.Mass.2006)(citing and quoting, *Brissette v. Franklin County Sheriff's Office*, 235 F.Supp.2d 63, 84 (D.Mass.2003).  Clearly, both Johnson's state and federal law claims "derive from a common nucleus

of operative facts." *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 1138 (1966).

Therefore, the Court may appropriately exercise pendent jurisdiction over Johnson's analogous state law claims.

## IV. CONCLUSION

For all of the foregoing reasons, the Plaintiff respectfully requests that the Court deny the Defendants' Motion to Dismiss, or, alternatively, convert said Motion into one falling under Fed. R. Civ. P. 56, and postpone hearing on any Rule 56 motion until the Parties have conducted discovery and filed the appropriate briefs.

Respectfully submitted,

The Plaintiff
FAITH JOHNSON
By Her Attorney

/s/ Michael O. Shea                               Dated:  August 26, 2014
MICHAEL O. SHEA, ESQ.
BBO No. 555474
Law Office of Michael O. Shea, P.C.
3 Crane Park Drive, Suite 7
Wilbraham, MA 01095
Telephone No.: (413) 596-8005
Facsimile No.: (413) 596-8095
Email: owenshea@aol.com

## CERTIFICATE OF SERVICE

I, Michael O. Shea, Esq., hereby certify that on the 26th day of August, 2014, I served the foregoing document by electronic filing through the ECF system to Counsel of Record for the Defendants.

/s/ Michael O. Shea
Michael O. Shea