UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 3:14-cv-30100-MGM

FAITH JOHNSON,

                    Plaintiff

v.

AMHERST NURSING HOME, INC.
D/B/A CENTER FOR EXTENDED CARE
AT AMHERST, KEENA KEERAN and
RASIDI AKODO,

                    Defendants

**LEAVE TO FILE GRANTED ON
JANUARY 14, 2015**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## I.  INTRODUCTION

The Plaintiff, Faith Johnson ("Plaintiff" or "Johnson" hereinafter), respectfully requests that this

Honorable Court deny the Defendants', Amherst Nursing Home, Inc. d/b/a Center for Extended Care at

Amherst and Keena Keeran (collectively referred to as "Defendants" hereinafter unless specifically

referred to as otherwise), *Motion to Dismiss the Plaintiff's First Amended Complaint* [32] ("Defendants'

Motion" hereinafter). In the alternative, the Plaintiff requests that the Court convert the Defendants'

Motion into one falling under Fed. R. Civ. P. 56, and postpone hearing on said Rule 56 motion until the

Parties have conducted discovery and depositions and have filed supplemental memoranda. *See* Fed. R.

Civ. P. 56(e) and (f).

The Defendants' Motion should be denied for the following reasons: (1) the Plaintiff has

complied with Massachusetts notice-pleading and has put the Defendants on sufficient notice of her

intended claims; (2) the Plaintiff's First Amended Complaint and Jury Demand ("Amended Complaint")

satisfies the standard set forth by the Supreme Court in *Bell Atl. Corp. v. Twombly*; and (3) the

Defendants are raising matters and issues well outside the four corners of the Plaintiff's Amended Complaint and such matters require information which can only be obtained during the discovery phase of this litigation.

## II.   STATEMENT OF RELEVANT SUBSTANTIVE FACTS

The Plaintiff began her employment with the Defendant CECAA in or about 2010 as a per-diem (full-time) certified nurse aide ("CNA"). Amended Compl. ¶ 7. The Defendant CECAA employs more than twenty employees. Amended Compl. ¶ 8.  Johnson worked on the Defendant CECAA's Dharma Unit. The Dharma Unit is a specialized unit dedicated to the care of residents suffering from Alzheimer's disease or dementia. Amended Compl. ¶ 9. Johnson performed her job responsibilities well throughout the course of her employment with the Defendant CECAA. Amended Compl. ¶ 10.

On or about August 22, 2012, while Johnson was cleaning up a resident's room, Johnson was sexually assaulted by the Defendant Akodo, a male CNA employed by the Defendant CECAA. Amended Compl. ¶ 11. The Defendant Akodo attacked Johnson from behind and restrained Johnson by wrapping his arm around Johnson's stomach.  Although Johnson fought back, physically trying to break free and continuously yelling for the Defendant Akodo to stop, the Defendant Akodo proceeded to attempt to rape Johnson. Amended Compl. ¶ 12. Johnson, eventually, was able to break free from the Defendant Akodo and ran out of the resident's room. Amended Compl. ¶ 13.

Johnson reported the sexual assault to management of the Defendant CECAA, including the Defendant Keeran, Manager of the Defendant CECAA's Dharma Unit as well as Joanne Lampron, Director of Nursing, among other management. Amended Compl. ¶ 14.  In response to Johnson's report of sexual assault, management of the Defendant CECAA misled Johnson into believing that the police would be notified of the same and that the Defendant Akodo would be terminated. Management also indicated that Johnson's report would be kept confidential. Amended Compl. ¶ 15.

Shortly thereafter, employees and management of the Defendant CECAA including, but not limited to, the Defendant Keeran, began to harass and retaliate against Johnson. Amended Compl. ¶ 16.

When Johnson handed her written statement of the sexual assault to the Defendant Keeran and Ms. Lampron, Ms. Lampron took the statement, tossed it aside and made a comment to the effect of "well, we don't need this anymore because you're being terminated." Ms. Lampron informed Johnson that she was being terminated due to an alleged no-call/no-show. Amended Compl. ¶ 17.

Although Johnson was able to refute the reasons given for the termination of her employment successfully, management of the Defendant CECAA continued to harass Johnson thereafter in an effort to force Johnson to resign from her employment. Amended Compl. ¶ 18. For example, the Defendant Keeran harassed Johnson by not responding to Johnson when she asked her a question and seemingly going out of her way to not acknowledge Johnson at all. Amended Compl. ¶ 19. On other occasions, in or about September of 2012, management of the Defendant CECAA changed Johnson's set work schedule without notifying her first which led to Johnson missing a scheduled work shift. Amended Compl. ¶ 20.

Although Johnson's complaint of the sexual assault was supposed to be kept confidential by management of the Defendant CECAA, upon Johnson's return to work, Johnson's coworkers were openly discussing the sexual assault. Johnson's coworkers harassed her because of the sexual assault. For example, several coworkers would call Johnson a "liar" and say that she had made up the sexual assault.  Several coworkers, when the nurses assigned work schedules at the beginning of the shift, would refuse to work with Johnson making comments such as "I don't want to fucking work with her." On one occasion, another CNA, carrying a tray of food including a cup of hot coffee, purposefully collided with Johnson while passing in the hallway causing the tray to spill over Johnson.  There are other examples as well. Amended Compl. ¶ 21.

The foregoing acts of harassment and retaliation created a hostile work environment for Johnson which continued until Johnson's last day of employment at the Defendant CECAA on September 22, 2012. Amended Compl. ¶ 22.  Johnson reported the harassment to management of the Defendant CECAA in an effort to remedy the same within the last few days preceding her constructive discharge of

employment on September 11, 2012. Johnson first requested that she not be scheduled to work on the Dharma Unit anymore and then later requested that she be able to switch to a regular position on another unit.  However, management of the Defendant CECAA denied both of Johnson's requests. Amended Compl. ¶ 23.

Within a few days of the constructive discharge of Johnson's employment, a supervisor informed Johnson that she needed to watch her back because the Defendant Keeran and Ms. Lampron wanted to get rid of her. Amended Compl. ¶ 24.

On or about September 11, 2012, due to the hostile work environment and the harassment and retaliation itself, Johnson was forced to resign from her employment with the Defendant CECAA and was constructively discharged. Amended Compl. ¶ 25. Johnson's last day of employment at the Defendant CECAA was on or about September 22, 2012. Amended Compl. ¶ 26.

In or about July of 2013, Johnson was informed of a communication with a manager which revealed that the Defendant Akodo had never been terminated from his employment at all but, rather, had been asked to resign so that he would not lose his nurse's aide certification. Amended Compl. ¶ 27. Upon information and belief, the Defendant Akodo sexually assaulted other individuals at the Defendant CECAA which went unreported and the Defendant Akodo is currently employed at another long-term nursing facility in the area. Amended Compl. ¶ 28. To date, and to Johnson's knowledge, the Defendant CECAA never notified the police of the sexual assault. Amended Compl. ¶ 29.

## III.    RELEVANT PROCEDURAL BACKGROUND

As discussed above, Johnson was misled by management of the Defendant CECAA into believing that the police had been notified of the sexual assault and that the Defendant Akodo had been terminated from his employment for the same. Amended Compl. ¶ 15. However, in or about July of 2013, Johnson was informed of a communication with a manager which revealed that the Defendant Akodo had never been terminated from his employment at all but, rather, had been asked to resign so that he would not lose his nurse's aide certification. Amended Compl. ¶ 27.  Thus, it was at this point

that Johnson learned that the Defendants had not taken remedial action in response to her report of sexual assault and Johnson immediately sought and retained counsel. Johnson's charge of discrimination was filed with the Massachusetts Commission Against Discrimination ("MCAD") that same day, on July 3, 2013. (*See* Ex. 1; Defs.' Memorandum in Support of Motion to Dismiss Plaintiff's Complaint [14]).

## IV.   ARGUMENT

### A.   The Defendants' Motion Must Be Denied Where The 300-Day Filing Requirement For Johnson's Claims Of Sexual Harassment And Sex/Gender Discrimination And Harassment Are Subject To Equitable Modification.

The Defendants argue that Counts I, II, IV and V of Johnson's Amended Complaint should be dismissed where the sexual assault on her by the Defendant Akodo occurred just days outside of the 300-day window preceding Johnson's filing of a charge of discrimination with the MCAD on July 3, 2013.  This argument fails, however, where the 300-day filing requirement is not jurisdictional and Johnson's claims of sexual harassment and sex/gender discrimination and harassment (in violation of Title VII of the Civil Rights Act of 1964, as amended, and Chapter 151B) are appropriate for equitable modification.  Therefore, the Court must deny the Defendants' Motion.

Both federal and state provisions require that an administrative charge be filed within 300 days of the unlawful employment practice. Title VII, 42 U.S.C. § 2000e–5(e)(1) (2006); Mass. Gen. Laws ch. 151B, § 5 (2011). In Massachusetts, the MCAD has a work sharing agreement with the Equal Employment Opportunity Commission ("EEOC") so that the filing of an administrative charge with one agency will automatically result in a filing of the same with the other agency. *EEOC v. Green*, 76 F.3d 19, 21 (1st Cir. 1996).  The 300-day filing requirement allows the federal and/or state agency the opportunity to investigate and settle a plaintiff's claims as well as to serve as a notice of a potential lawsuit for defendants. *Carter v. Comm'r of Corr.*, 43 Mass.App.Ct. 212, 217 (1997). *See also*, *Lattimore v. Polaroid Corp.,* 99 F.3d 456, 464 (1st Cir. 1996). Importantly, the 300-day filing requirement is not a jurisdictional prerequisite but, instead, is analogous to a statute of limitations which

is "subject to equitable modification." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982); *Kale v. Combined Ins. Co. of America*, 861 F.2d 746, 752 (1st Cir. 1988).

The purpose of both Title VII and Chapter 151B are to rid the work place of unlawful discrimination and, hence, the filing requirement is "to be interpreted broadly to effect the law[s'] remedial purposes." *Ruffino v. State Street Bank and Trust Co.*, 908 F.Supp. 1019, 1037 (1995); *Zipes,* 455 U.S. at 392-398; *see also*, *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 928 (5th Cir. 1975)(noting that Title VII "contemplates that complaints initiating EEOC proceedings will be brought in the first instance by laymen …" and, therefore, it would be unreasonable for courts to "apply technical rules of common law pleading to charges filed initially with the [EEOC]")(additional citations omitted).  Consequently, exceptions to the filing requirements such as equitable estoppel and equitable tolling under both Title VII and Chapter 151B exist. *See* Massachusetts Commission Against Discrimination Guidelines, Sexual Harassment in the Workplace, § 7; *Zipes*, 455 U.S. at 393. In addition to equitable estoppel and equitable tolling, the filing requirement will not bar a complainant in circumstances where the alleged conduct was of a continuing nature. *Id*. Such exceptions to the filing requirement were developed among the courts in those cases, such as here, were it is necessary "to prevent an injustice that might otherwise be worked by a literal application of the statute." *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 927 (5th Cir. 1975).

### 1.  Continuing Violation

The Defendants argue that Johnson's claims of sexual harassment and sex/gender discrimination and harassment are time-barred due to the 300-day filing requirement.  However, the 300-day filing requirement will not bar claims based on the fact that some of the alleged conduct occurred outside of the 300 days prior to filing but continued into the preceding 300 days (i.e. a continuing violation).  A continuing violation can occur in two forms: (1) systemic violation; and (2) serial violation.  A "systemic" violation occurs when an ongoing discriminatory policy or practice exists and continues into the filing period. *See Jensen v. Frank,* 912 F.2d 517, 523 (1st Cir. 1990)("so long as the policy or

practice itself continues into the limitation period, a challenger may be deemed to have filed a timely complaint"). The second type of continuing violation is of the "serial" form, where a series of related acts together form a discriminatory pattern of conduct. It is this form of the continuing violation that applies in cases of sexual harassment. *See* Massachusetts Commission Against Discrimination Sexual Harassment in the Workplace Guidelines, § 7.

As interpreted by both state and federal courts, the continuing violation exception recognizes that some claims of discrimination involve a series of related events that must be viewed in their totality in order to assess adequately their discriminatory nature and impact. *See O'Rourke v. City of Providence,* 235 F.3d 713, 732 (1st Cir. 2001). Sexual harassment is usually a cumulative process rather than a one-time event, and a plaintiff may be unable to appreciate that he or she is being discriminated against until he or she has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern. The test for whether a continuing violation exists differs between state and federal court.

### i.      **Chapter 151B**

After years of confusion between state and federal jurisprudence in this area, the Supreme Judicial Court in *Cuddyer v. Stop & Shop Supermarket Co.,* clarified the standard for a continuing violation under Chapter 151B, setting out a three-part test:  First, the employee must establish that at least one instance of harassment, discrimination and/or retaliation occurred within the limitations period. 434 Mass. 521, 533 (2001). The conduct within the limitations period need not, standing alone, have created a hostile work environment. *Id*. Second, the conduct within the limitations period must be substantially linked to the earlier, untimely conduct by similarity, repetition, and continuity. *Id.*(it must be shown that the timely act "substantially relates to earlier incidents of abuse, and substantially contributes to the continuation of a hostile work environment, such that the incident anchors all related incidents, thereby making the entirety of the claim for discriminatory conduct timely"). Third, any delay by the employee in filing his or her charge must not be unreasonable. Thus an employee may seek damages for conduct occurring outside the limitations period unless the employee considers his or her

situation to be "hopeless," i.e., that the employee "knew or reasonably should have known that her work situation was pervasively hostile and unlikely to improve, and, thus, a reasonable person in her position would have filed a complaint with the MCAD before the statute ran on that conduct." *Cuddyer,* 434 Mass. at 539, 540-41. If the court finds the employee's failure to file his or her charge earlier was unreasonable, the employee may still file a claim as to the timely events and use the untimely events as evidence.

### ii.   Title VII

In 2002, the U.S. Supreme Court, in *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002), set forth the continuing violation rule for a hostile environment case under Title VII.  The Court recognized that all the individual actions that make up a hostile environment are part of one single unlawful employment practice, even if the actions took place over the course of years. Therefore, as long as any one incident falls within the filing period, all the related conduct is timely and can be part of a timely filed sexual harassment claim. The Court explained:

> Given, therefore, that the incidents comprising a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.

*Morgan,* 536 U.S. at 118.  In determining whether an incident is an act of sexual harassment, the First Circuit takes a broad view and may encompass not just conduct that is sexual in nature, but also "incidents of nonsexual conduct — such as work sabotage, exclusion, denial of support, and humiliation — [which] can in context contribute to a hostile work environment." *O'Rourke v. City of Providence,* 235 F.3d 713, 730 (1st Cir. 2001).

In the instant case, Johnson's claims of sexual harassment are based upon a hostile work environment theory of recovery.  In *Morgan*, the Supreme Court explained:

> A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e–5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for

purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).  Thus, the sexual assault on Johnson by the Defendant Akodo is not necessarily in and of itself one unlawful act.  Instead, the sexual assault and the subsequent incidents of discrimination and harassment that immediately followed Johnson's reporting of the sexual assault to management of the Defendant CECAA up until Johnson's last day of employment on September 22, 2012, taken together, constitute as one "unlawful employment practice."  Where Johnson's charge of discrimination was filed on July 3, 2013, 315 days after the sexual assault on August 22, 2012, Johnson's claims are not time-barred and the Defendants' Motion must be denied.

### 2.  Equitable Modification

Equitable modification may be applied in circumstances where a plaintiff is reasonably misled by the defendant/employer and/or is "excusably ignorant" of the administrative filing deadline. *See* Massachusetts Commission Against Discrimination Guidelines, Sexual Harassment in the Workplace § 7; *Zipes*, 455 U.S. at 393 (1982); *Kale,* 861 F.2d at 752.  If such circumstances are found to exist, the time period for filing an administrative charge is, generally, "triggered once the [plaintiff] knows or should know that he or she is being discriminated against." *Wheatley v. American Tel. & Tel. Co.*, 418 Mass. 394, 398 (1994)(citing *McConnell v. General Tel Co. of Cal.*, 814 F.2d 1311, 1317 (9th Cir. 1987)). There are two types of equitable modification – equitable estoppel and equitable tolling. *Zipes v. TWA, Inc.*, 455 U.S. 385, 386 (1982).

### i.   Equitable Estoppel

Equitable estoppel occurs in circumstances where a plaintiff, although aware of their rights, does not file a timely administrative charge due to a reasonable reliance on their employer's misleading representations and/or conduct. *See* Massachusetts Commission Against Discrimination Guidelines,

Sexual Harassment in the Workplace § 7; *Zipes v. TWA, Inc.*, 455 U.S. 385, 393 (1982); *Kale,* 861 F.2d

at 752. In order to invoke equitable estoppel, a plaintiff must show either: (1) the employer's

purposefully deceptive actions; or (2) the employer's constructive knowledge of its deceptive actions.

*Kale*, 861 F.2d at 752.  However, a plaintiff's "hope for rehire, transfer, promotion, or a continuing

employment relationship … [alone] cannot toll the statute absent some employer conduct likely to

mislead an employee into sleeping on his rights." *Price v. Litton Business Systems, Inc.,* 694 F.2d 963,

965-966 (4th Cir.1982).

      The Defendants argue that Johnson is not entitled to equitable estoppel because "whether

Defendant Akodo was terminated or resigned or whether Defendant CECAA reported the alleged sexual

harassment to the police has absolutely no bearing whatsoever on Johnson's claims for sexual

harassment." (See Defs.' Memo. pg. 12).  However, whether or not the Defendants took adequate and

prompt remedial action in response to Johnson's report of sexual assault is entirely relevant to Johnson's

showing of a prima facie case of a hostile work environment. *See Torres-Negron v. Merck & Company,

Inc.*, 488 F.3d 34, 39-40 (1st Cir. 2007)(explaining that defendants will be liable to plaintiff for a co-

worker who created a hostile work environment "if it was negligent either in discovering or remedying

the harassment")(citing *Crowley v. L.L. Bean, Inc.,* 303 F.3d 387, 401 (1st Cir. 2002).  Thus, equitable

estoppel is appropriately considered in application to Johnson's claims of hostile work environment

against the Defendants.

      In *Reeb v. Economic Opportunity Atlanta, Inc.*, plaintiff had been informed by defendant,

plaintiff's former employer, that her employment was being terminated due to a lack of funding. 516

F.2d 924 (5th Cir. 1975). Plaintiff's employment was terminated on September 24, 1969.  Although

plaintiff initially accepted defendant's rationale for her termination as true, plaintiff subsequently

learned on April 20, 1970 that, in fact, her position had been filled by a less qualified male employee on

November 10, 1969.  On April 28, 1970 (i.e., 216 days after plaintiff's termination of employment),

plaintiff filed a charge of discrimination with the EEOC and subsequently filed suit against defendant

alleging discriminatory discharge based upon her sex/gender and in violation of Title VII.  The district court dismissed plaintiff's complaint for want of jurisdiction where a charge of discrimination was required to be filed with the EEOC within ninety days of the adverse action, for which plaintiff appealed.  On appeal, the Fifth Circuit adopted the view that the ninety-day filing requirement was not jurisdictional and, therefore, subject to equitable estoppel and equitable tolling. The Court determined that defendant was equitably estopped from invoking the statute of limitations defense to plaintiff's claims where: (1) the defendant had not demonstrated any prejudice in relation to plaintiff's failure to file a charge of discrimination within the ninety-day period; (2) plaintiff alleged that defendant "actively sought to mislead" plaintiff; and (3) plaintiff alleged that "facts that would alert a reasonable person to the unlawful discrimination only became known to [] plaintiff more than six months after the discriminatory act." Therefore, the Fifth Circuit vacated the dismissal of plaintiff's complaint and remanded the case to the district court for further proceedings holding that the ninety-day period for which a plaintiff must file a charge of discrimination with the EEOC "did not begin to run … until the facts that would support a charge of discrimination under Title VII were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to [] plaintiff."

Similar to *Reeb*, the Defendants in the instant case have failed to demonstrate any prejudice regarding the timing of Johnson's filing of a charge of discrimination with the MCAD/EEOC, and, thus, equitable estoppel is appropriately applied to Johnson's claims of hostile work environment against the Defendants. This is especially true where Johnson's constructive discharge and retaliation claim clearly fall within the 300-day window preceding the filing of the administrative charge.[1] Second, Johnson maintains that she was misled by management of the Defendant CECAA into believing that the sexual assault was reported to the police and that the Defendant Akodo was terminated as a result of the sexual assault, which consequently should have led to the revocation of his nurse's aide certification. Compl. ¶

---

[1] Johnson's charge of discrimination was filed with the MCAD/EEOC on July 3, 2013, which places all events occurring on or after September 6, 2012 within the 300-day window. Thus, the hostile work environment that ensued, the retaliation and Johnson's constructive discharge of employment which followed Johnson's report of sexual assault to management of the Defendant CECAA clearly fall within the 300-day window and are timely.

14; Amended Compl. ¶ 15. Certainly, Johnson's reliance that the Defendant Akodo had been terminated from his employment was reasonable given that the Defendant Akodo did not return to work after Johnson reported the sexual assault on August 24, 2012. That, but for these misrepresentations, Johnson would have pursued her rights much earlier than she did.  Indeed, after learning that the Defendant Akodo had not been terminated and was likely working in another local nursing home, Johnson immediately sought counsel. Amended Compl. ¶ ¶ 27-29.

### ii.   Equitable Tolling

When presented with the question of whether equitable tolling of the 300-day filing requirement is appropriate in a particular situation, the First Circuit has stated that the following factors should be considered:

> (1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement.

*Kale v. Combined Ins. Co. of America*, 861 F.2d 746, 752 (1st Cir. 1988)(quoting *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir.1988)).  In addition to the foregoing, the court must also consider whether or not a plaintiff was represented by counsel during the applicable statute of limitations and, if so, "he or she is charged with constructive knowledge of all procedural requirements." *Id*. at 753.  Here, Johnson was not represented by counsel before the actual date of her filing of the EEOC/MCAD Charge.

In the instant matter, Johnson, after reporting the sexual assault to management of the Defendant CECAA, was misled into believing that the incident was going to be reported to the police and that the Defendant Akodo was going to be terminated for the same. Amended Compl. ¶ ¶ 14, 15.

In response to her report of sexual assault, and instead of informing Johnson of her rights, Ms. Lampron instructed Johnson to go home and write a written statement concerning the sexual assault. Interestingly, Ms. Lampron refused to allow Johnson to write the statement during the meeting or on a formal complaint form and, instead, insisted that Johnson go home and write the statement on "computer

paper." Ms. Lampron further instructed Johnson to turn the statement in to management when she returned for her next scheduled shift, which Johnson did.  Ms. Lampron and the Defendant Keeran immediately proceeded to terminate Johnson's employment.  Johnson was falsely accused of having no call/no showed for a shift but was able to refute management's reasons for termination and, so, management was unable to terminate Johnson's employment at that time. Amended Compl. ¶ ¶ 16-18.

Despite the subsequent harassment and retaliation against Johnson thereafter by her coworkers and management of the Defendant CECAA (continuing up until the final day of Johnson's employment on September 22, 2012) Johnson believed that the police had been notified of the sexual assault and that the Defendant CECAA had terminated the Defendant Akodo's employment for the same. Amended Compl. ¶¶ 15-22.  It was not until almost one year later, in or about July of 2013, that Johnson was informed of a communication with a manager at the Defendant CECAA which revealed that the Defendant Akodo had never been terminated from his employment at all.  Rather, Johnson was informed that the Defendant Akodo had been asked to resign so that he would not lose his nurse's aide certification and was working in another local nursing home. It was at this point that Johnson sought and retained counsel and a charge of discrimination was filed with the MCAD that same day.  Amended Compl. ¶ ¶ 27-29.

Given the foregoing, equitable modification is clearly appropriate in the instant matter where Johnson was, indeed, misled and purposefully deceived by the Defendants to believe, not only that the police would be contacted, but also that the Defendant Akodo's employment would be terminated in response to her report of sexual assault. Amended Compl. ¶ 15.  Moreover, Johnson, not knowing the applicable filing deadline, after learning that the Defendants had not terminated the Defendant Akodo, immediately retained counsel and her charge of discrimination was filed with the MCAD that day. Clearly, to deny Johnson the possibility of recovery against the Defendants for the sexual assault that she endured while working at the Defendant CECAA on the sole basis that it occurred fifteen days outside of the filing requirement would be unjust, particularly where there are here many anchoring

instances of harassment/retaliation within the 300-day filing requirement. Therefore, in order to avoid such injustice, the Court must deny the Defendants' Motion.

**B.   The Court Must Deny The Defendants' Motion Where Johnson Has Satisfied The Twombly/Iqbal Pleading Standard Sufficient To Withstand A Motion To Dismiss.**

**1.   Motion to Dismiss – Legal Standard**

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff[ ]. *Gargano v. Liberty Intern. Underwriters*, 572 F.3d 45, 48 (1st Cir. 2009)(citing *Fitzgerald v. Harris*, 549 F.3d 46, 52 (1st Cir. 2008)).  Moreover, "[t]he general rules of pleading require 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (citing Fed.R.Civ.P. 8(a)(2)). "This short and plain statement need only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Id.* at 48-49 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Plaintiff's facts must "contain enough meat to support a reasonable expectation that an actionable claim *may* exist." *Andrew Robinson Int'l v. Hartford Fire Ins.*, 547 F.3d 48, 51 (1st Cir. 2008) (emphasis supplied)(citing *Bell Atlantic Corp. v. Twombly* and *Morales-Tanon v. P.R. Elec. Power Auth.*, 524 F.3d 15, 18 (1st Cir. 2008)).

The U.S. Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal Twombly* require that a complaint allege "a plausible entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "plausible entitlement to relief" standard replaces the standard established in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Rodriguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007). Despite this change in the old standard, *Twombly* makes clear that "[a]sking for plausible grounds [ ] does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable

expectation that discovery will reveal evidence of [the alleged illegal conduct]." *Bell Atlantic Corp.*, 550 U.S. at 556.  Moreover, the Court in *Twombly* makes note that its "analysis does not run counter to *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), which held that 'a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination.'" *Bell Atlantic Corp.*, 550 U.S. at 569-570.  The *Twombly* decision does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

It is fundamental that under notice-pleading requirements, the burden on the Plaintiff is minimal, requiring only that she aver sufficient information to identify for the Defendants the claims against them and the basis upon which she is entitled to relief. Fed. R. Civ. P. 8(a)(1). *See also, Bell v. Mazza*, 394 Mass. 176, 184 (1985).  In Count I, Johnson alleges sexual harassment against the Defendant CECAA (Title VII).  In Count II, Johnson alleges sex/gender discrimination and harassment against the Defendant CECAA (Title VII).  In Count III, Johnson alleges retaliation against the Defendant CECAA (Title VII).  In Count IV, Johnson alleges sexual harassment against the Defendant CECAA (M.G.L. c. 151B).  In Count V, Johnson alleges sex/gender discrimination and harassment against the Defendant CECAA (M.G.L. c. 151B).  In Count VI, Johnson alleges retaliation against the Defendant CECAA (M.G.L. c. 151B).  In Count VII, Johnson alleges negligent hiring and supervision against the Defendant CECAA. In Count XI, Johnson alleges sex/gender discrimination and harassment against the Defendant Keeran (M.G.L. c. 151B). In Count XII, Johnson alleges retaliation against the Defendant Keeran (M.G.L. c. 151B).

Retaliation is a separate cause of action under both M.G.L. c. 151B and Title VII.  *See* 42 U.S.C. § 2000e-3(a); M.G.L. c. 151B, § 4. A plaintiff need not prove an underlying case of discrimination to prevail on retaliation claims. *See Noviello v. City of Boston*, 398 F.3d 76 (1st Cir. 2005).

As outlined in Section II above, Johnson has pled sufficient facts in her Amended Complaint which clearly demonstrate a reasonable expectation that actionable claims exist or *may* exist under both

Title VII and M.G.L. c. 151B as well as a negligent hiring and supervision theory of recovery, which is all that is required under the notice-pleading doctrine as modified by *Twombly* and interpreted by the First Circuit. *See also*, *Sisco v. DLA Piper LLP*, 833 F.Supp.2d 133, 140 (D.Mass.2011). "In the employment discrimination context, it is not necessary for a plaintiff to plead facts supporting each element of a claim, provided that whatever facts are plead allow the Court to plausibly infer liability." *Id.* (noting that, "dismissal … at this early stage is rare … in employment cases")(internal quotations omitted); s*ee also*, *Anderson v. Found. for Advancement, Educ. & Employment of Amer. Indians*, 155 F.3d 500, 505 (4th Cir. 1998)(explaining that notice pleading requires a complaint to be read liberally in favor of the plaintiff).

Johnson's Amended Complaint alleges that Johnson was sexually assaulted by the Defendant Akodo on or about August 22, 2012 when the Defendant Akodo attempted to rape her in a resident's room during work. Amended Compl. ¶¶ 11-13. Johnson reported the sexual assault to management of the Defendant CECAA and provided them with a written statement outlining the same. Amended Compl. ¶¶ 14, 17.  Management of the Defendant CECAA misled Johnson into believing that the police would be notified about the sexual assault and that the Defendant Akodo would be terminated from his employment. Amended Compl. ¶ 15. That after Johnson reported the sexual assault, Johnson was harassed and retaliated against by management of the Defendant CECAA.  In fact, the same day that Johnson went to turn in her written statement regarding the sexual assault, management attempted to terminate Johnson's employment for false reasons which Johnson was able to refute. Amended Compl. ¶¶ 17-18. Johnson was also harassed by coworkers regarding the sexual assault. Amended Compl. ¶¶ 16-22.  Despite Johnson's reports to management of the hostile work environment and Johnson's attempts to remedy the same by requesting to work on a different unit, management denied Johnson's requests. Consequently, it was only a matter of weeks that Johnson was constructively discharged from her employment. Amended Compl. ¶¶ 22-26.  Thus, Johnson can establish a causal connection between the adverse employment actions and the protected activity, as the alleged retaliatory acts are close in time to

Johnson's protected activity. *E.g., Mole v. University of Massachusetts*, 442 Mass. 582, 596 (2004),

citing *Chungchi Che v. Massachusetts Bay Transp. Auth.*, 342 F.3d 31, 38 (1st Cir. 2003) (despite

passage of eleven months between filing of claim and demotion of plaintiff, "[e]vidence of

discriminatory or disparate treatment in the time period between the protected activity and the adverse

employment action can be sufficient to show a causal connection"); citing *Robinson v. Southeastern Pa.*

*Transp. Auth.*, 982 F.2d 892, 895 (3rd Cir. 1993) (ongoing "pattern of antagonism" sufficient to

establish causal link between employee's filing of grievance and his discharge two years later); and also

citing *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 329 (10th Cir.), cert. denied, 518 U.S. 1019 (1996)

(lack of close temporal proximity not fatal to retaliatory discharge claim if "pattern of retaliatory

conduct begins soon after [protected activity] and only culminates later in actual discharge").

     It was not until July of 2013, that Johnson was informed of a communication with a manager

which revealed that the Defendant Akodo had never been terminated from his employment at all but,

rather, had been asked to resign so that he would not lose his nurse's aide certification. Amended

Compl. ¶ 27. It was at this point that Johnson sought and retained counsel and a charge of discrimination

was filed with the MCAD that same day, on July 3, 2013. (*See* Ex. 1; Defs.' Memorandum in Support of

Motion to Dismiss Plaintiff's Complaint [14]).  Upon information and belief, the Defendant Akodo

sexually assaulted other individuals at the Defendant CECAA which went unreported and the Defendant

Akodo is currently employed at another long-term nursing facility in the area. Amended Compl. ¶ 28.

     Whether Johnson has viable claims is a question of law and fact which will require the Court to

consider matters outside of the pleadings. Johnson should be allowed the opportunity to conduct

discovery and depositions of witnesses in this matter in an effort to prove his claims against the

Defendants. The Defendants are raising matters and issues well outside the four corners of the pleadings

and have failed to meet *their burden* of showing that Johnson's claims are not plausible and that he

cannot show that he is entitled to relief.

C. **Johnson Was Constructively Discharged From Her Employment At The Defendant CECAA.**

To prove constructive discharge, a plaintiff must establish that the situation was so intolerable that a reasonable person in his or her position would have felt compelled to resign. *See GTE Products Corp. v. Stewart*, 421 Mass. 22, 34 (1995); *Levesque v. Quality Brands Liquor*, 19 M.D.L.R. 154, 156 (1997). The same evidence necessary to prove sexual harassment will often establish the elements of constructive discharge. *See, e.g.*, *Levesque*, 19 M.D.L.R. at 156; *Choukas v. Ocean Kai Restaurant*, 19 M.D.L.R. 169, 171 (1997).

As discussed in detail above, Johnson reported the sexual assault to management of the Defendant CECAA.  Rather than reporting the sexual assault to the police and terminating the Defendant Akodo's employment, however, management of the Defendant CECAA proceeded to terminate Johnson's employment in response to Johnson's report of sexual assault. Amended Compl. ¶ 17. Indeed, it was the same meeting where Johnson turned in her written statement regarding the sexual assault to the Defendant Keeran and Ms. Lampron that Ms. Lampron stated that they no longer needed Johnson's written statement anymore because she was being terminated. *Id*. To make matters worse, despite the fact that Johnson was able to refute the Defendants' reasons for terminating her employment, management of the Defendant CECAA proceeded to harass and retaliate against Johnson.  Specifically, the Defendants permitted other coworkers to harass Johnson regarding the sexual assault when, despite Johnson's complaints of the hostile work environment, refused to allow her to work and/or transfer to another unit. Amended Compl. ¶ 23.

In hostile environment cases, the employer has a duty to investigate and promptly and adequately remedy the situation. *College-Town Div. of Interco, Inc. v. MCAD*, 400 Mass. 156, 167-168 (1987).  In the instant case, the Defendants failed to adequately investigate Johnson's complaints or adequately remedy the situation, and Johnson was constructively discharged from her employment following the reporting of sexual harassment and resisting and reporting of the subsequent harassment and retaliation.

Importantly, of constructive discharge claims in cases of sexual harassment, the MCAD has actually opined that an employee "must pursue *reasonable* alternatives to quitting" which "is a *fact-specific* inquiry." *MCAD Guidelines*, Sec. VIII.  Moreover, while according to the MCAD it may be more difficult to establish constructive discharge where an employer has internal complaint procedures and the employee has not pursued those, one is not precluded from claiming that she has been constructively discharged due to sexual harassment. *See id.*; *see also Reed v. MBNA Marketing Sys.*, 333 F.3d 27, 36 (1st Cir. 2003)(finding that an employee can claim constructive discharge even when employee did not complain pursuant to employer's sexual harassment policy).

Either way, in the instant case, Johnson's Amended Complaint clearly establishes that Johnson attempted to remedy the situation by reporting, not only the sexual assault, to management of the Defendant CECAA but also the subsequent harassment.  Johnson was denied the ability to work on and/or to transfer units, which she attempted to do to avoid resigning from her employment. Amended Compl. ¶ 23.

### D. Johnson Properly Alleged Count XI, "M.G.L. c. 151B – Sex/Gender Discrimination And Harassment," And Count XII, "M.G.L. c. 151B - Retaliation" Against The Defendant Keeran And, Therefore, These Counts Should Stand.

Counts XI and XII of Johnson's Amended Complaint state valid causes of action against the Defendant Keeran and are otherwise properly asserted.  Chapter 151B makes it unlawful, in relevant part, for "any *person*, employer…to discharge, expel or otherwise discriminate against any person because [she] has opposed any practices forbidden under this chapter," M.G.L. c. 151B, § 4(4), and/or "any *person* to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter." M.G.L. c. 151B, § 4(4A).  A "person" under the statute includes "one or more individuals." M.G.L. c. 151B, § 1(1).  Given that sex/gender discrimination and harassment and retaliation are prohibited by Chapter 151B, the Defendant Keeran can legally be found to have violated even if he is not considered an "employer" or "supervisor."

Chapter 151B, does not limit the categories of persons who may be individually liable. To the

contrary, the plain language of the statute provides on its face for individual liability in several sections.

*Beaupre v. Smith & Associates*, 50 Mass.App.Ct. 480, 490–491 (2000).  The *Beaupre* court rejected the

defendant's suggestion that the court should construe Chapter 151B as limited to those who can be

considered "employers." 50 Mass.App.Ct. at 490.  Rather, the court held that the defendant could be

named individually under Chapter 151B "for his active sexual harassment of the plaintiff," reasoning, in

part:

> Highly pertinent in this regard are the mandate of G.L. c. 151B, § 9, that the provisions of
> the chapter must be construed liberally for the accomplishment of its purposes – one of
> which was to discourage and penalize discriminatory conduct, including sexual
> harassment, by individuals – and the explicitly declared policy of the Commonwealth that
> all persons have the right to be free from sexual harassment. G.L. c. 214, § 1C.

*Id*. at 492.  The court also found significant the fact that the defendant had been individually named and

alleged to have "had personal responsibility for the plaintiff's claimed sexual harassment and subsequent

injuries" in both the MCAD and Court complaints, as has occurred in the current case. *Id*.

Johnson also has a valid claim of retaliation against the Defendant Keeran. *See Handy v. Kraft*,

2004 Mass. App. Div. 185 (2004)("the test on a motion to dismiss under…Rule 12[b][6]…is that the

moving party must establish beyond doubt that there is no set of facts which the plaintiff could show that

would entitle her to relief," citing *Nader v. Citron*, 372 Mass. 96, 98 [1977]).  According to the First

Circuit Court of Appeals, in order to prove retaliatory harassment, "a plaintiff must establish the basic

fact that he was subjected to an adverse employment action *because* of his protected activity." *Lewis v.

Gillette, Co.*, 22 F.3d 22, 24 (1st Cir. 1994)(internal citations omitted).  The *Lewis* decision goes on to

state, "[a]t a minimum, there must be competent evidence that the alleged retaliators knew of the

plaintiff's protected activity and that a retaliatory motive played a part in the adverse employment

action." *Id*.  Contrary to the Defendants' contention, there is absolutely a set of facts against the

Defendant Keeran which Johnson can show would entitle her to relief.

By way of illustration, Johnson provides the following argument.  Johnson has alleged facts sufficient to support a claim of sex/gender discrimination and harassment and retaliation against the Defendant Keeran in her Amended Complaint, to wit: after Johnson reported the sexual assault to management of the Defendant CECAA, including the Defendant Keeran, and provided them with a written statement, Johnson was subjected to harassment and retaliation by coworkers and management of the Defendant CECAA, including the Defendant Keeran.  In fact, the Defenant Keeran and Ms. Lampron attempted to terminate Johnson's employment for false reasons on the same day that Johnson was scheduled to turn in her statement regarding the sexual assault. That despite Johnson's complaints and attempts to correct the same, Johnson was forced to resign from her employment and was constructively discharged in a matter of weeks following her filing of written statement of the sexual assault. Johnson's Amended Complaint also alleges that Johnson had been misled by management of the Defendant CECAA into believing that the Defendant Akodo would be terminated, the police notified in response to her report of sexual assault and her complaint kept confidential.  But that, in or about July of 2013, Johnson learned that management had not terminated the Defendant Akodo at all but, rather, had asked the Defendant Akodo to resign from his employment so that he would not lose his nurse's aide certification and that the Defendant Akodo was working in another nursing home facility in the area.

To be sure, discovery could very well yield information showing that management of the Defendant CECAA, including the Defendant Keeran: (1) knew or should have known that the Defendant Akodo had engaged in similar sexually offensive and illegal conduct in the past; (2) discriminated against and harassed Johnson after Johnson reported the sexual assault; and (3) have routinely engaged in discriminatory and harassing behavior toward its employees based upon their sex/gender in the past. Ultimately, the Defendants have failed to meet their burden of showing that, *beyond doubt*, Johnson cannot show that she is entitled to relief for sex/gender discrimination and harassment and retaliation by the Defendant Keenan for engaging in protected activity. *See Martin v. Irwin Industrial Tool Company*, 2012 U.S. Dist. LEXIS 62293 (May 3, 2012)(denying defendant's motion to dismiss complaint as to

plaintiff's chapter 151B claims against individual defendant where defendants' "actions, as fleshed out during discovery, may be found sufficient to have created a hostile work environment or to have constituted retaliation under subsection (4) or (4A)" of Chapter 151B.

**E.** **Johnson's Claim For Negligence – Negligent Hiring And Supervision (Count VII) Is Not Barred.**

The Defendants argue that Johnson's claim of negligent hiring and supervision against the Defendant CECAA is barred by the exclusivity provisions of the Workers' Compensation Act, M.G.L. c. 152, § 24.  The Workers' Compensation Act ensures that employees who surrender their common law rights to sue their employer will not be left without legal recourse, will have a way for which to be reimbursed injuries resulting out of their employment. *Brown v. Nutter, McClennen & Fish*, 45 Mass.App.Ct. 212, 216 (1998)(citing *Neff v. Commissioner of Dept. of Indus. Accs.,* 421 Mass. 70, 75 (1995)). The exclusivity provision of the Worker's Compensation Act states that it shall be the "exclusive remedy against coemployees who engage in tortious conduct within the course of their employment and in furtherance of the employer's interest." *Brown v. Nutter, McLennen & Fish,* 45 Mass.App.Ct. 212, 216 (1998)(citing *O'Connell v. Chasdi,* 400 Mass. 686, 690–691 (1987); *Catalano v. First Essex Sav. Bank,* 37 Mass.App.Ct. 377, 381–382 (1994); *Fusaro v. Blakely,* 40 Mass.App.Ct. 120, 123 (1996)).

Whether or not an employee was acting "within the course of their employment and in furtherance of the employer's interest," *Richards v. Walter Fernald State School*, 12 Mass.L.Rptr. 180 at *5 (Mass. Super. July 31, 2000), for purposes of determining the applicability of the Workers' Compensation Act's exclusivity provision, requires a "fact-intensive analysis." *Brown v. Nutter, McClennen & Fish*, 45 Mass.App.Ct. 212, 216 (1998).  Massachusetts courts have interpreted conduct such as the exercise of a supervisor's duties over a subordinate employee, including the denial of time-off requests and the issuance of disciplinary action, "even if unjust or unwarranted," as acts occurring "in furtherance of the employer's interest." *Richards v. Walter Fernald State School*, 12 Mass.L.Rptr.

180 at *5 (Mass. Super. July 31, 2000); *see e.g. Anzalone v. Massachusetts Bay Transportation Authority,* 403 Mass. 119, 124-25 (1988); *Fusaro v. Blakey,* 40 Mass.App.Ct. 120, 123-24 (1996). In the instant matter, however, it can hardly be said that the Defendant Akodo was acting in furtherance of the Defendant CECAA's interest when the Defendant Akodo attempted to rape Johnson during work hours in a resident's room. Amended Compl. ¶ ¶ 11-13. *See e.g.*, *Doe v. Purity Supreme, Inc.*, 422 Mass. 563, 568 (1996)(finding that rape and sexual assault of employee "do not serve the interests of the employer); *O'Connell v. Chasdi,* 400 Mass. 686, 690 (1987)(employee accused of sexually harassing coworker was not "furthering the interests of the employer").

The Defendants next argue that Johnson's "common law claims are merely recast versions of her [claims] under [Massachusetts General Laws Chapter] 151B," and are barred by the exclusivity provision of Chapter 151B. (*See* Defs.' Memorandum in Support of Motion to Dismiss Plaintiff's Amended Complaint [33] pg. 18). However, "a court may entertain common law claims, even if they are based on [sex/gender] discrimination …" where Chapter 151B does not "preclude[] or preempt[] all traditional tort claims, even if based on many of the same facts." *McAleer v. Prudential Ins. Co. of America*, 928 F.Supp.2d 280, 290-291 (2013). As the Massachusetts Supreme Judicial Court explained in *Comey v. Hill*, Chapter 151B "broadens existing remedies rather than requiring resort to it as exclusive of all other remedies …" and "common law rights that existed before the adoption of [Chapter 151B] are not barred by the exclusivity provision." 387 Mass. 11, 20 (1982); *see also Ping Zhao v. Bay Patch College*, 982 F.Supp.2d 104, 116 (2013)(denying defendant's motion to dismiss plaintiff's common law claims where the same were enacted prior to Chapter 151B). Indeed, Chapter 151B "expressly provides that it does not repeal 'any other law of this commonwealth,' which must include the common law developed by the courts of the Commonwealth …" *Id*. at 291 (declining to interpret Chapter 151B as "preventing a plaintiff from pursuing claims based on existing common law causes of action").

Accordingly, where "[p]assage of the Massachusetts antidiscrimination statute did not repeal existing common law remedies" and the common law tort of negligent hiring and/or supervision of an employee by an employer has been recognized by Massachusetts Courts since as early as 1902, *Foster v. Loft, Inc.*, 26 Mass.App.Ct. 289, 290 (1988)(citing *Carson v. Canning,* 180 Mass. 461, 62 N.E. 964 (1902)), prior to the enactment of Chapter 151B in 1946, the Plaintiff's claim of negligent hiring/supervision against the Defendant CECAA should not be dismissed. *Long vs. American Intern. Adjustment Co.*, 1986 WL 9806 (D.Mass. 1986).

**F.   This Court Has Pendent Jurisdiction Over Johnson's State Law Claims.**

The Defendants argue that Johnson has not established, in her Amended Complaint, this Court's jurisdiction over her state law claims. This argument fails, however, where Johnson's Amended Complaint clearly establishes that Johnson "is entitled to relief" under federal and state law as required by Fed. R. Civ. P Rule 8(a) and that the facts underlying her claims under both Chapter 151B and Title VII "derive from a common nucleus of operative facts." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).  Other factors considered include, but are not necessarily limited to, judicial economy, fairness, comity and convenience. *Id.* at 726. The final consideration relates to the construction of the state and federal statutes. *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).

Johnson's Amended Complaint contains nine causes of action (Counts I-VII, XI and XII) against the Defendants. Specifically, Johnson's Amended Complaint alleges that the Defendant Akodo sexually assaulted Johnson when he attempted to rape her in a resident's room during work on August 22, 2012. After Johnson reported the sexual assault to management of the Defendant CECAA and provided them with a written statement, Johnson was subjected to harassment and retaliation by coworkers and management of the Defendant CECAA. That despite Johnson's complaints and attempts to correct the same, Johnson was forced to resign from her employment and was constructively discharged in a matter of weeks following her filing of written statement of the assault. Johnson's Amended Complaint also alleges that Johnson had been misled by management of the Defendant CECAA into believing that the

Defendant Akodo would be terminated, the police notified in response to her report of sexual assault and her complaint kept confidential. But that, in or about July of 2013, Johnson learned that management had not terminated the Defendant Akodo at all but, rather, had asked the Defendant Akodo to resign from his employment so that he would not lose his nurse's aide certification and that the Defendant Akodo was working in another nursing home facility in the area.

Title VII is the Federal analogue to Chapter 151B. *Lopez v. Commonwealth*, 463 Mass. 696, 703 n.8 (2012)(citing *College–Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 163 (1987)). Thus, the standards applied to a hostile work environment claim arising from gender-based discrimination under Title VII "are essentially 'analogous'" to those applied under Chapter 151B. *Bourbeau v. City of Chicopee*, 445 F.Supp.2d 106 (D.Mass.2006)(citing and quoting, *Brissette v. Franklin County Sheriff's Office*, 235 F.Supp.2d 63, 84 (D.Mass.2003). Clearly, both Johnson's state and federal law claims "derive from a common nucleus of operative facts." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Therefore, the Court may appropriately exercise pendent jurisdiction over Johnson's analogous state law claims.

## V. <u>CONCLUSION</u>

For all of the foregoing reasons, Johnson respectfully requests that the Court deny the *Defendants' Motion to Dismiss Plaintiff's First Amended Complaint* or, alternatively, convert said Motion into one falling under Fed. R. Civ. P. 56, and postpone hearing on any Rule 56 motion until the Parties have conducted discovery and filed the appropriate briefs.

Respectfully submitted,


The Plaintiff
FAITH JOHNSON
By Her Attorney

/s/ Michael O. Shea                              Dated:  January 13, 2015
MICHAEL O. SHEA, ESQ.
BBO No. 555474
Law Office of Michael O. Shea, P.C.
3 Crane Park Drive, Suite 7
Wilbraham, MA 01095
Telephone No. (413) 596-8005
Facsimile No. (413) 596-8095
Email: owenshea@aol.com


## REQUEST FOR ORAL ARGUMENT

I, Michael O. Shea, Esq., hereby request oral argument on the subject Motion, as oral argument will likely assist the court in a ruling on the Motion.

/s/ Michael O. Shea
Michael O. Shea


## CERTIFICATES OF SERVICE

I, Michael O. Shea, Esq., hereby certify that on the 14th day of January, 2015, I served the foregoing document by electronic filing through the ECF system to Counsel of Record for the Defendants, Amherst Nursing Home, Inc. d/b/a Center for Extended Care at Amherst and Keena Keeran.

/s/ Michael O. Shea
Michael O. Shea


I, Michael O. Shea, Esq. hereby further certify that on the 14th day of January, 2015, I served a true copy of the foregoing document via first class mail, postage prepaid, to the *pro se* Defendant, Rasidi Akodu, at Post Office Box 3293, Amherst, Massachusetts, 01004.

/s/ Michael O. Shea
Michael O. Shea