UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FAITH JOHNSON,                          *
                                        *
        Plaintiff,                      *
                                        *
        v.                              *
                                        *       Civil Action No. 14-30100-MGM
AMHERST NURSING HOME, INC. D/B/A         *
CENTER FOR EXTENDED CARE AT             *
AMHEREST, KEENA KEERAN, and             *
RASIDI AKODO,                           *
                                        *
        Defendants.                     *

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION TO DISMISS
(Dkt. No. 32)

August 11, 2015

MASTROIANNI, U.S.D.J.

I.  INTRODUCTION

Faith Johnson ("Plaintiff") brings this action against Amherst Nursing Home, Inc. doing

business as Center for Extended Care at Amherst ("CECAA"), Keena Keeran, and Rasidi Akodo

(together, "Defendants").  Plaintiff alleges that she was sexually assaulted by a co-worker, Akodo,

while working at CECAA, sexually harassed and retaliated against by other workers thereafter, and,

ultimately, constructively discharged.  In particular, Plaintiff brings the following claims: sexual

harassment in violation of Title VII of the Civil Rights Act of 1964 against CECAA (Count I),

sex/gender discrimination and harassment in violation of Title VII against CECAA (Count II),

retaliation in violation of Title VII against CECAA (Count III), sexual harassment in violation of

M.G.L. c. 151B against CECAA (Count IV), sex/gender discrimination and harassment in violation

of M.G.L. c. 151B against CECAA (Count V),[1] retaliation in violation of M.G.L. c. 151B against

CECAA (Count VI), negligent hiring and supervision against CECAA (Count VII), assault and

battery against Akodo (Count VIII), sexual harassment in violation of M.G.L. c. 151B against Akodo

(Count IX), retaliation in violation of M.G.L. c. 151B against Akodo (Count X), sex/gender

discrimination and harassment in violation of M.G.L. c. 151B against Keeran (Count XI), and

retaliation in violation of M.G.L. c. 151B against Keeran (Count XII).

CECAA and Keeran (together, "CECAA Defendants") filed a motion to dismiss Plaintiff's

amended complaint for failure to state a claim upon which relief may be granted.[2]  For the

following reasons, the court will grant the CECAA Defendants' motion to dismiss in part and deny

it in part.


## II.  BACKGROUND

The following facts come directly from Plaintiff's amended complaint.  Plaintiff began her

employment with CECAA in 2010 as a full-time per-diem certified nurse aid ("CNA").  (Dkt. No.

29, Am. Compl. ¶ 7.)  CECAA employs more than twenty employees.  (Id. ¶ 8.)  Plaintiff worked in

CECAA's Dharma Unit, which is a specialized unit dedicated to the care of residents suffering from

Alzheimer's disease or dementia.  (Id. ¶ 9.)  Throughout the course of her employment at CECAA,

Plaintiff performed her job responsibilities well.  (Id. ¶ 10.)

On August 22, 2012, Akodo, a male CNA also employed by CECAA, sexually assaulted

Plaintiff while she was cleaning up a resident's room.  (Id. ¶ 11.)  Akodo attacked Plaintiff from

behind and restrained her by wrapping his arm around her stomach.  (Id. ¶ 12.)  Plaintiff fought

---

[1] At the hearing on the motion to dismiss, Plaintiff conceded that Counts II and V were duplicative of Counts I and IV and, therefore, should be dismissed.  The court will therefore dismiss the claims of sex/gender discrimination and harassment in violation of Title VII against CECAA (Count II) and sex/gender discrimination and harassment in violation of M.G.L. c. 151B against CECAA (Count V).

[2] Akodo is not represented by the CECAA Defendants' counsel but, rather, is proceeding pro se. He has not filed a motion to dismiss.  Accordingly, the court will only address Counts I, III, IV, VI, VII, XI, and XII.

back, tried to break free, and continuously yelled for Akodo to stop, but he "proceeded to attempt to rape" her.  (Id.)  Eventually, Plaintiff succeeded in breaking free and ran out of the resident's room.  (Id. ¶ 13.)  Plaintiff reported the sexual assault to CECAA management, including Keeran, the Manager of the Dharma Unit, as well as Joanne Lampron, the Director of Nursing at CECAA, among others.  (Id. ¶ 14.)  In response to Plaintiff's report, CECAA management misled Plaintiff into believing that the police would be notified of the assault and that Akodo would be terminated.  (Id. ¶ 15.)  Management also indicated that Plaintiff's report would be kept confidential.  (Id.)

Shortly thereafter, Plaintiff alleges, employees and management of CECAA including (but not limited to) Keeran "began to harass and retaliate against" Plaintiff.  (Id. ¶ 16.)  After Plaintiff handed Lampron her written statement of the sexual assault, Lampron "took the statement, tossed it aside and made a comment to the effect of 'well, we don't need this anymore because you're being terminated.'"  (Id. ¶ 17.)  Lampron explained that Plaintiff "was being terminated due to an alleged no-call/no-show."  (Id.)  Plaintiff successfully rebutted the attempted termination by demonstrating that the reasons provided were false.  (Id. ¶ 18.)  However, Plaintiff alleges, CECAA management "continued to harass [her] thereafter in an effort to force [her] to resign."  (Id. ¶ 18.)  In particular, Keeran harassed Plaintiff "by not responding . . . when she asked her a question and seemingly going out of her way to not acknowledge" Plaintiff at all.  (Id. ¶ 19.)  In addition, in September, 2012, CECAA management changed Plaintiff's set work schedule without notifying her first, which caused Plaintiff to miss a scheduled work shift.  (Id. ¶ 20.)

Although management should have kept Plaintiff's complaint confidential, Plaintiff's co-workers, upon her return to work, were openly discussing the sexual assault and harassing her because of it.  (Id. ¶ 21.)  Several co-workers called her a "liar" and said that she fabricated the assault.  (Id.)  Moreover, after the nurses assigned work schedules at the beginning of a shift, several co-workers refused to work with Plaintiff and made "comments such as 'I don't want to fucking

work with her.'" (Id.)  On another occasion, a CNA carrying a tray of food and a cup of hot coffee purposely collided with Plaintiff while passing her in the hallway, causing the tray to spill on her. (Id.)  Plaintiff alleges that "[t]he foregoing acts of harassment and retaliation created a hostile work environment for [her] which continued until [her] last day of employment at . . . CECAA on September 22, 2012." (Id. ¶ 22.)

In the days leading up to September 11, 2012, Plaintiff reported the harassment to CECAA management in an effort to remedy it.  (Id. ¶ 23.)  She first requested not to be scheduled to work in the Dharma Unit any longer; she later requested a switch to a regular position in another unit.  (Id.) CECAA management, however, denied both requests.  (Id.)  Around this time, a CECAA supervisor informed Plaintiff that she needed to watch her back because Keeran and Lampron wanted to get rid of her.  (Id. ¶ 24.)  Plaintiff alleges that on September 11, 2012, "due to the hostile work environment and the harassment and retaliation itself, [she] was forced to resign from her employment . . . and was constructively discharged." (Id. ¶ 25.)  Her last day of employment was on September 22, 2012.  (Id. ¶ 26.)

In July, 2013, Plaintiff "was informed of a communication with a manager which revealed that . . . Akodo had never been terminated from his employment at all but, rather, had been asked to resign so that he would not lose his nurse's aid certification." (Id. ¶ 27.)  In addition, Akodo sexually assaulted others at CECAA, but those assaults went unreported; he is currently employed at another long-term nursing facility in the area.  (Id. ¶ 28.)  CECAA never notified the police about Akodo's sexual assault of Plaintiff.  (Id. ¶ 29.)

Plaintiff brought this action on May 30, 2014.  (Dkt. No. 1, Compl.)  She alleges, in her amended complaint, that she "has satisfied the prerequisites to filing suit." (Dkt. No. 29, Am. Compl. ¶ 30.)

III.     STANDARD OF REVIEW

When confronted with a Rule 12(b)(6) motion to dismiss for failure to state a claim, the

court must accept the well-pleaded allegations of the complaint as true, drawing all reasonable

inferences in favor of the plaintiff.  See S.E.C. v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010).  A

complaint that states a plausible claim for relief, on its face, will survive a motion to dismiss.  See

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The Supreme Court has explained that "[a] claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  Id.


IV.     ANALYSIS

A.     Statute of Limitations (Counts I and IV)

The CECAA Defendants first argue that Plaintiff's sexual harassment claims against CECAA

are untimely because the alleged incident which forms the basis of those claims—the sexual assault

by Akodo—occurred more than 300 days prior to her filing her Massachusetts Commission Against

Discrimination ("MCAD") and Equal Employment Opportunity Commission ("EEOC") charge.[3]

The CECAA Defendants also argue that the continuing violation doctrine, which permits a filing as

to certain untimely acts of discrimination if they are sufficiently related to the timely acts of

discrimination, does not apply because the sexual assault is the sole basis for Plaintiff's claims.  In

---

[3] The court agrees with the CECAA Defendants that it may consider the MCAD filing, which also constitutes the
EEOC filing due to a work-sharing agreement between the agencies, Seery v. Biogen, Inc., 203 F.Supp.2d 35, 41-42 (D.
Mass. 2002), despite the fact that the CECAA Defendants attached it as an exhibit to the motion to dismiss.  By alleging
that she "has satisfied the prerequisites for filing suit," Plaintiff's amended complaint referenced this filing, and Plaintiff
has not disputed its authenticity.  See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008)
("When . . . a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document (the
authenticity of which is not challenged) that document effectively merges into the pleadings and the trial court can
review it in deciding a motion to dismiss under Rule 12(b)(6)." (quoting Beddal v. State St. Bank & Trust Co., 137 F.3d
12, 16-17 (1st Cir. 1998))).  In addition, MCAD and EEOC filings are official public records, which likewise may be
considered at this stage.  See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (courts may also consider "official public
records" at the motion to dismiss stage); Cintron-Garcia v. Supermercados Econo, Inc., 818 F. Supp. 2d 500, 506
(D.P.R. 2011) (collecting cases for the proposition that an EEOC charge may be considered at the motion to dismiss as
an official public record).

response, Plaintiff argues that the continuing violation theory does apply here because the harassment constituted a series of related acts that together form a discriminatory pattern of conduct and some of the discriminatory acts occurred within the limitations period.

Plaintiff alleges that Akodo sexually assaulted her on August 22, 2012.  However, Plaintiff filed her Charge of Discrimination with MCAD on July 3, 2013, which, due to the work-sharing agreement, is also the filing date with EEOC.  See Seery v. Biogen, Inc., 203 F.Supp.2d 35, 41-42 (D. Mass. 2002).  (Dkt. No. 33, Ex. 1.)  "Both the federal and state provisions require that a charge be filed within 300 days of the alleged unlawful employment practice."  Tuli v. Brigham & Women's Hosp., 656 F.3d 33, 40 (1st Cir. 2011) (citing 42 U.S.C. § 2000e-5(e)(1) and Mass. Gen. Laws Ch. 151B, § 5).  Three hundred days prior to July 3, 2013 was September 6, 2012.  Therefore, some of the incidents alleged in the complaint, including the sexual assault, occurred outside the limitations period.  Nonetheless, in light of the continuing violation doctrine, the court cannot conclude that Plaintiff's federal or state sexual harassment claims against CECAA are untimely.

In Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Supreme Court described the applicability of the continuing violation doctrine to Title VII claims.  First, the Court quoted the statute, which states that "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful practice occurred."  Id. at 109 (quoting 42 U.S.C. § 2000e-5(e)(1) (emphasis added)).[4]  The Court then applied that language to "discrete discriminatory acts," which often include "termination, failure to promote, denial of transfer, or refusal to hire [and] are easy to

---

[4] The statute provides an exception such that "in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . , such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1).  The Supreme Court in Morgan recognized the 300-day limitations period in cases such as this:  "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days."  Morgan, 536 U.S. at 109.  Importantly for purposes of the Supreme Court's analysis in Morgan, both the 180-day language and the 300-day language in the statute use the phrase "shall be filed . . . after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1).

identify." Id. at 114.  As to these types of acts, the Court held, "[e]ach incident of discrimination

and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful

employment practice,'" and a plaintiff can only file a charge to cover the acts that occurred within

the limitations period.  Id.  Thus, the Court rejected the continuing violation theory as to discrete

discriminatory acts.  See id. at 110-115.  However, the court explained, "[h]ostile environment claims

are different in kind from discrete acts.  Their very nature involves repeated conduct."  Id. at 115.

"The 'unlawful employment practice' therefore cannot be said to occur on any particular day.  It

occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of

harassment may not be actionable on its own."  Id.  Accordingly, as it applies to the statutory

language, "[a] hostile work environment claim is composed of a series of separate acts that

collectively constitute one 'unlawful employment practice.'"  Id. at 117 (quoting 42 U.S.C. § 2000e-

5(e)(1)).  The Court thus held that "[i]t does not matter, for purposes of the statute, that some of the

component acts of the hostile work environment fall outside the statutory time period."  Id.

"Provided that an act contributing to the claim occurs within the filing period, the entire time period

of the hostile environment may be considered by a court for purposes of determining liability."  Id.

        Based on this standard and the nature of Plaintiff's claim in Count I, the court agrees with

Plaintiff that the claim appears timely, at least at this stage of the litigation.  The CECAA

Defendants argue that the sole basis for Plaintiff's harassment claims is the sexual assault

perpetrated by Akodo and, thus, appear to be arguing that Plaintiff has alleged a "discrete

discriminatory act" claim.  Clearly, however, Plaintiff has alleged hostile work environment sexual

harassment claims.  Moreover, to the extent the sexual assault provides some basis for the hostile

work environment claims, it is not necessarily due to the assault itself but, rather, CECAA's

negligence "either in discovering or remedying the harassment."  Torres-Negron v. Merck & Co.,

Inc., 488 F.3d 34, 40 (1st Cir. 2007).

The CECAA Defendants also argue that the only conduct which is sexual in nature was committed by Akodo and, in particular, the conduct alleged against CECAA management was not severe or pervasive conduct of a sexual nature.  But, as Plaintiff asserts, the First Circuit, in explaining that "[c]ourts should avoid disaggregating a hostile work environment claim, dividing such conduct into instances of sexually oriented conduct and instances of unequal treatment, then discounting the latter category of conduct," stated that "incidents of nonsexual conduct—such as work sabotage, exclusion, denial of support, and humiliation—can in context contribute to a hostile work environment."  O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001).  The CECAA Defendants, therefore, are urging the court to do precisely what the First Circuit has warned against—disaggregating Plaintiff's hostile work environment claim into instances of sexual and nonsexual conduct and discounting the latter.  See id. ("[W]here a plaintiff endures harassing conduct, although not explicitly sexual in nature, which undermines her ability to succeed at her job, those acts should be considered along with overtly sexually abusive conduct in assessing a hostile work environment claim.").  Accordingly, the court will not dismiss Plaintiff's Title VII hostile work environment claim as untimely, despite the fact that some of the incidents giving rise to the claim occurred more than 300 days prior to the EEOC charge.

As for Count IV, the hostile work environment sexual harassment claim brought under state law, the Supreme Judicial Court ("SJC") also recognizes that claims based in part on untimely acts of discrimination may be considered timely under a continuing violation theory.  Similar to the Supreme Court in Morgan, the SJC explained that "[i]ncidents of sexual harassment serious enough to create a work environment permeated by abuse typically accumulate over time, and many incidents in isolation may not be serious enough for complaint."  Cuddyer v. Stop & Shop Supermarket Co., 750 N.E.2d 928, 937 (Mass. 2001).  "However, when linked together, the seemingly disparate incidents may show a prolonged and compelling pattern of mistreatment that

have forced a plaintiff to work under intolerable, sexually offensive, conditions." Id. "It is

important to note that sexual discrimination based on a hostile work environment is a unitary cause

of action based on the cumulative effect of hostile acts over the course of time, not one action based

on the sum total of many mutually distinct incidents." Id. The SJC thus held that, to establish a

timely hostile work environment claim under M.G.L. c. 151B, a plaintiff

> must show, within the [limitations] period, the existence of at least one incident of
> sexual conduct which, standing alone might not necessarily support her claim, but
> which substantially relates to earlier incidents of abuse, and substantially contributes
> to the continuation of a hostile work environment, such that the incident anchors all
> related incidents, thereby making the entirety of the claim for discriminatory conduct
> timely.

Id. The SJC also held there may be instances in which a plaintiff waits too long to file her claim.

For example, if "the plaintiff knew or reasonably should have known that her work situation was

pervasively hostile and unlikely to improve, and, thus, a reasonable person in her position would

have filed a complaint with the MCAD before the statute ran on that conduct," then the continuing

violation doctrine will not save the claim. Id. at 942.

Again, based on this standard and Plaintiff's claim, the court concludes that Plaintiff has

plausibly alleged a timely claim. The SJC's standard in Cuddyer appears somewhat more stringent

than the standard adopted by the Supreme Court in Morgan. Nevertheless, Plaintiff has alleged

sufficient facts to fit within that standard. The court plausibly infers the timely discriminatory

conduct substantially related to the untimely conduct and substantially contributed to the

continuation of the hostile work environment. Plaintiff alleged facts indicating her co-workers and

supervisors mistreated her because of her sexual assault allegation and that CECAA management

failed to adequately remedy the issues. At the least, whether the timely and untimely conduct was

sufficiently related is a factual issue more appropriate for resolution at summary judgment.

Moreover, the court cannot conclude that Plaintiff waited an unreasonable amount of time to file

her charge. She was only a handful of days late if measured by the sexual assault date. She also

alleges that CECAA management misled her into believing that they fired Akodo and contacted the police, and after discovering this she filed her charge immediately.

The CECAA Defendants argue that all of the allegations as to CECAA management relate to Plaintiff's retaliation claim and must be analyzed separately from the sexual harassment claims. Thus, the CECAA Defendants seem to be arguing the untimely conduct (namely, Akodo's sexual assault) is not sufficiently related to the subsequent conduct because each stems from different motivations—the earlier conduct was based on gender-based discriminatory animus, while the latter conduct was based on retaliatory animus.  They cite <u>Noviello v. City of Boston</u>, 398 F.3d 76, 87 (1st Cir. 2005), for the proposition that "sexual harassment and retaliatory harassment . . . must be viewed for what they are: two separate and independent harms."[5]  Indeed, the First Circuit explained that in order to invoke the continuing violation doctrine, "a claimant must show at a bare minimum a series of discriminatory acts that emanate from the same discriminatory animus."  <u>Id.</u>  The court continued:  "Even when retaliation is derivative of a particular act of harassment, it normally does not stem from the same animus.  Most often, retaliation is a distinct and independent act of discrimination, motivated by a discrete intention to punish a person who has rocked the boat by complaining about an unlawful employment practice."  <u>Id.</u>  The court then explained that "nothing in the record indicates that [the retaliatory acts perpetrated by co-workers] were undertaken for reasons related to the plaintiff's gender.  As such, the sexual harassment and retaliatory harassment <u>in this case</u> must be viewed for what they are: two separate and independent harms."  <u>Id.</u> (emphasis added).  Importantly, <u>Noviello</u> was on appeal from a grant of summary judgment, not a motion to dismiss, and so the plaintiff there was able to conduct discovery bearing on the issue of motivation.

---

[5] Although the CECAA Defendants appear to make this argument with regard to both the federal and state sexual harassment claims, it is only applicable to the state claim.  The First Circuit in <u>Noviello</u> was discussing the state law claim in that portion of the decision, and only the state continuing violation doctrine requires a substantial relation between the untimely conduct and the timely conduct.

Moreover, the First Circuit has also recognized that when "the evidence can reasonably be viewed as demonstrating either discriminatory animus or retaliatory animus, [courts] may consider the same evidence in assessing the sufficiency of both of the plaintiff's claims." Perez-Cordero v. Wal-Mart Puerto Rico, Inc., 656 F.3d 19, 32 (1st Cir. 2011). Accordingly, in view of the facts in Noviello (including the full quotation in context), and the relaxed standard on a motion to dismiss, it is simply premature to dismiss Plaintiff's sexual harassment claim on this ground. While the CECAA Defendants may end up having a strong (and perhaps winning) argument in this regard down the road, it is too early to determine that the harassing and/or retaliatory conduct following the sexual assault was in no way related to gender-based animus.


      B.       Failure to State a Claim (Counts I and IV)

The CECAA Defendants also argue, aside from statute of limitation issues, that Plaintiff failed to state a claim upon which relief can be granted as to the sexual harassment claims against CECAA. In particular, they argue that CECAA took adequate steps to remedy the sexual assault allegation and the allegations of conduct by CECAA management are neither sexual in nature nor based on Plaintiff's gender. Plaintiff responds by arguing that she has alleged sufficient facts to support her claims.

"An employer's liability for a hostile work environment claim depends on the harasser's employment status relative to the victim's: [The employer] is vicariously liable if [the employee's] supervisors . . . created a hostile work environment . . . , but if a co-worker created the hostile work environment, [the employer] will be held liable only if it was negligent in either discovering or remedying the harassment." Torres-Negron, 488 F.3d at 40 (citations omitted); see also Noviello, 398 F.3d at 95 ("When coworkers, rather than supervisors, are responsible for the creation and perpetuation of a hostile work environment, Title VII and chapter 151B seem essentially

coterminous.").[6]  The CECAA Defendants only focus on the alleged harassment created by non-supervisory co-workers and, thus, appear to argue that Plaintiff did not suffer any harassment from supervisors.  In the court's view, however, Plaintiff alleges harassment from <u>both</u> supervisors and mere co-workers.

As to the mere co-workers, the court cannot conclude at this stage that the <u>only</u> sexual harassment was perpetrated by Akodo or that CECAA in fact took adequate steps to remedy the harassment.  Rather, it is plausible to infer the co-worker taunting and harassment following the assault was in some way motivated by Plaintiff's gender.  See <u>Grajales v. Puerto Rico Ports Authority</u>, 682 F.3d 40, 49 (1st Cir. 2012) ("Smoking gun proof of discrimination is rarely available, especially at the pleading stage. . . .  Nor is such proof necessary.  When a protean issue such as an actor's motive or intent is at stake, telltale clues may be gathered from the circumstances surrounding the adverse action. . . .  The plausibility threshold simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the illegal conduct." (internal citations and quotation marks omitted)).  Moreover, even if the only sexual harassment by co-workers was the sexual assault perpetrated by Akodo, "isolated incidents may, 'if egregious enough, suffice to evince a hostile work environment.'"  <u>Ponte v. Steelcase Inc.</u>, 741 F.3d 310, 320 (1st Cir. 2014).  The factors for determining whether harassment is sufficiently severe or pervasive include "the severity of the conduct, its frequency, whether it is physically threatening or not, and whether it interfered

---

[6] In addition, under Title VII, "[a]n employer's vicarious liability for an actionable hostile work environment created by a supervisor is subject to an affirmative defense [known as the <u>Faragher/Ellerth</u> defense], which may only be asserted where no tangible employment action is taken."  <u>Torres-Negron</u>, at 40 n.5.  Plaintiff does assert that she was constructively discharged, which, if true, may amount to a "tangible employment action" and therefore would preclude the assertion of the <u>Faragher/Ellerth</u> defense.  See <u>Lee-Crespo v. Schering-Plough Del Caribe Inc.</u>, 354 F.3d 34, 45 (1st Cir. 2003).  Because the CECAA Defendants have not yet asserted this defense—which, in any event, would be more appropriate at summary judgment—the court need not consider whether the harassment resulted in a "tangible employment action."  Accordingly, as discussed below, constructive discharge is not an essential element of Plaintiff's harassment claims.  Rather, the question is whether "the harassment was so 'severe or pervasive' that, in essence, it altered the terms or conditions of her employment.  <u>Id.</u> at 46.  Moreover, as to the Chapter 151B harassment claim, employers are not entitled to an affirmative defense to supervisor-created harassment but, rather, are "strictly liable for supervisory harassment."  <u>Noviello</u>, 398 F.3d at 95.

with the victim's work performance." Id. (quoting Gerald v. Univ. of P.R., 707 F.3d 7, 18 (1st Cir. 2013). At this stage, Plaintiff has alleged sufficient facts in support of severe or pervasive harassment perpetrated by co-workers.

With regard to CECAA's response to the harassment, it is simply too early to determine whether such response was adequate. Plaintiff alleges that she requested not to work in the Dharma Unit and requested a switch to a regular position in another unit, which requests were both denied. And, while there are no allegations that Plaintiff was forced to work directly alongside Akodo after the assault, compare White v. DaVita, Inc., 2013 WL 65409, *8 (D.Mass. Jan. 3, 2013), it is not clear when Akodo resigned or exactly how that resignation took place.

As to harassment by supervisors, Plaintiff alleges that Lampron initially refused to accept Plaintiff's account of the assault and attempted to terminate her on pretextual grounds, that Keeran went out of her way to ignore her, that CECAA management changed her work schedule without first informing her and thus caused her to miss a shift, and that CECAA management improperly told co-workers about the assault allegation. In addition, Plaintiff alleges that a CECAA supervisor informed her to watch her back because Keeran and Lampron "wanted to get rid of her." Although these allegations at first glance may not appear sufficiently severe and pervasive, that is a factual question inappropriate to resolve on a motion to dismiss.

C.     Constructive Discharge (Counts I, III, IV, and VI)

The CECAA Defendants argue the sexual harassment and retaliation claims against CECAA must be dismissed because Plaintiff failed to adequately allege that she was constructively discharged. They cite Landrau-Romero v. Banco Popular De Puerto Rico, 212 F.3d 607, 613 (1st Cir. 2000), for the proposition that an allegation of constructive discharge "presents a 'special wrinkle' that amounts to an additional prima facie element" of a sexual harassment claim.

Moreover, the CECAA Defendants argue that because Plaintiff has not established constructive discharge, she has not alleged any "adverse employment action," which is necessary element of a retaliation claim.  In response, Plaintiff argues she has alleged sufficient facts demonstrating that she was constructively discharged.  Plaintiff also argued at the hearing on the instant motion that she is not required to establish constructive discharge to support her claims and, in particular, the hostile work environment constitutes adverse employment action for purposes of the retaliation claims.

It is clear both that constructive discharge is not a required element of a sexual harassment claim and that Plaintiff has not brought an independent constructive discharge claim.  Rather, it is only potentially relevant to Plaintiff's damages (namely, the availability of back-pay damages) in the event she succeeds on her claims and to the availability of the Faragher/Ellerth affirmative defense, see footnote 6, neither of which must (or should) be decided at this stage.  Accordingly, the court need not decide whether the facts alleged rise to the level of a constructive discharge.

The Landrau-Romero case actually stands for the opposite proposition of what the CECAA Defendants assert.  Immediately preceding the language they quote, the First Circuit stated: "In an employment discrimination case alleging termination, the plaintiff first must establish a prima facie case, i.e., that he (1) was within a protected class; (2) met the employer's legitimate performance expectations; (3) was actually or constructively discharged; and (4) was replaced by another with similar skills and qualifications."  Id. at 612-13 (emphasis added).  Accordingly, it is only in employment discrimination cases based on terminations that a "constructive discharge presents a 'special wrinkle' that amount to an additional prima facie element."  In the following section, the First Circuit stated that the plaintiff "asserted a claim of race-based harassment that is separate from the failure to promote and constructive termination claims."  Id. at 613.  Thus, the First Circuit recognized that harassment claims are separate from termination claims.  As discussed, a harassment claim is still viable even if it does not result in a "tangible employment action," which could include

a constructive discharge, so long as the harassment was sufficiently severe and pervasive. See Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 46 (1st Cir. 2003). Therefore, because Plaintiff has not brought an independent constructive discharge claim—rather, that allegation is merely part of her other claims—it is not a required element to succeed on those other claims. See, e.g., Winspear v. Community Development, Inc., 574 F.3d 604, 607-608 (8th Cir. 2009) (holding that the district court erred "because it treated [the plaintiff's hostile work environment claim] as one for constructive discharge, requiring elements unnecessary to resolving" his claim, and stating that "[h]ostile work environment and constructive discharge claims may be wholly distinct causes of action under Title VII. . . . The claims have different elements . . . and, while a hostile work environment can form the basis for a constructive discharge allegation, hostile work environment discrimination can exist absent a 'tangible employment action.'" (citations omitted)); Knabe v. Boury Corp., 114 F.3d 407, 408 n.1 (3d Cir. 1997) ("Knabe's constructive discharge claim, as presented, is not a separate ground for relief, but rather would factor into the damages (e.g., backpay), available to Knabe had she prevailed in proving Boury's liability for sexual harassment."); Kalinoski v. Gutierrez, 435 F.Supp.2d 55, 73-74 (D.D.C. 2006) ("[T]he Court does not interpret plaintiff's references to constructive discharge as pleading an independent basis for Title VII liability (i.e., a separate actionable adverse action). Rather, the Court considers the compound allegation to be an assertion ultimately relating to the scope of plaintiff's potential recovery in the event she prevails on the claims of discrimination or retaliation.").

With regard to Counts III and VI, the retaliation claims under federal and state law, it is also clear that constructive discharge is not a required element. As the First Circuit has explained, "[b]oth Title VII and chapter 151B contain provisions that make it unlawful for employers to retaliate against persons who complain about unlawfully discriminatory employment practices." Noviello, 398 F.3d at 88 (citing 42 U.S.C. § 2000e-3(a) and Mass. Gen. Laws Ch. 151B, § 4(4)). "To

engage the gears of either statute, a plaintiff must show that (i) she undertook protected conduct, (ii) she suffered an adverse employment action, and (iii) the two were causally linked." Id. Here, the CECAA Defendants argue that Plaintiff has not demonstrated an "adverse employment action" because she has not alleged facts showing that she was constructively discharged. In Noviello, however, the First Circuit held that "a hostile work environment, tolerated by the employer, is cognizable as a retaliatory adverse employment action for purposes of 42 U.S.C. § 2000e-3(a)." Id. at 89. "This means that workplace harassment, if sufficiently severe or pervasive, may in and of itself constitute an adverse employment action sufficient to satisfy the second prong of the prima facie case for Title VII retaliation cases." Id. The Noviello court also held such a retaliatory hostile work environment theory is also available under Massachusetts law to satisfy the "adverse employment action" prong. Id. at 90-91. The same standard applied to a straight-forward hostile work environment sexual harassment claim applies to a retaliatory hostile work environment claim—that is, the harassment must be sufficiently severe or pervasive such that it altered the conditions of the plaintiff's employment. Id. at 92. Accordingly, Plaintiff is not required to establish a constructive discharge with regard to her retaliation claims either, and the court will not decide whether the facts alleged rise to that level.

     D.    Claims Against Keeran (Counts XI and XII)

In Counts XI and XII, Plaintiff asserts claims against Keeran for sex/gender discrimination and harassment in violation of M.G.L. c. 151B and retaliation in violation of M.G.L. c. 151B, respectively. The CECAA Defendants argue the only conduct attributed to Keeran in the amended complaint is paragraph 19, which states: "For example, the Defendant Keeran harassed the Plaintiff by not responding to the Plaintiff when she asked her a question and seemingly going out of her way to not acknowledge the Plaintiff at all." (Dkt. No. 29, Am. Compl.) This allegation, according to

16

the CECAA Defendants, is insufficient to support either claim against Keeran. Plaintiff responds by arguing that she has alleged sufficient facts to state claims against Keeran. She asserts that Keeran and Lampron attempted to terminate her when she turned in her statement regarding the sexual assault; that she was constructively discharged just weeks later; and that she was misled by CECAA management into believing that Akodo would be terminated, the police would be notified of her report, and her complaint would be kept confidential.

As an initial matter, and as Plaintiff argues, it is clear that Chapter 151B does not limit liability only to "employers" in the way that Title VII does. Compare Beaupre v. Cliff Smith & Associates, 738 N.E.2d 753, 764 (Mass.App.Ct. 2000) (individual employee liability available under chapter 151B) with Fantini v. Salem State College, 557 F.3d 22, 31 (1st Cir. 2009) (individual employee liability unavailable under Title VII).

Nevertheless, the court agrees with the CECAA Defendants that Plaintiff has alleged insufficient facts to state a claim against Keeran for sexual harassment or retaliation. The CECAA Defendants are correct that the only conduct specifically attributed to Keeran is paragraph 19 and that such conduct does not rise to the level of severe or pervasive harassment necessary to support a hostile work environment sexual harassment claim or a retaliatory hostile work environment claim. With regard to Plaintiff's assertion that Lampron and Keeran attempted to terminate her upon receiving Plaintiff's statement, the complaint only alleges conduct on the part of Lampron. (Dkt. No. 29, Am. Compl. ¶ 17.) The court therefore will dismiss Counts XI and XII without prejudice.

E.      Negligent Hiring and Supervision (Count VII)

The CECAA Defendants next argue that Plaintiff's claim for negligent hiring and supervision against CECAA is barred by the exclusivity provisions of the Massachusetts Workers' Compensation Act, M.G.L. c. 152, and the Massachusetts Fair Employment Practices Act, M.G.L. c.

151B.  In response, Plaintiff argues this claim is not barred by the Worker's Compensation Act because Akodo was not acting in furtherance of CECAA's interest when he attempted to rape her. Moreover, Plaintiff argues, this claim is not barred by chapter 151B because it existed before the adoption of chapter 151B.  The court concludes that the Worker's Compensation Act bars Count VII.[7]

The Supreme Judicial Court has explained that "[c]ommon law actions are barred by the exclusivity provision of the workers' compensation act where: 'the plaintiff is shown to be an employee; his condition is shown to be a personal injury within the meaning of the [workers'] compensation act; and the injury is shown to have arisen out of and in the course of . . . employment.'"  Green v. Wyman-Gordon Co., 664 N.E.2d 808, 813 (Mass. 1996) (quoting Foley v. Polaroid Corp., 413 N.E.2d 711, 713-14 (Mass. 1980)).  The First Circuit in Clarke v. Kentucky Fried Chicken of California, 57 F.3d 21, 27-29 (1st Cir. 1995), explicitly held the plaintiff's claims of "negligence in hiring, supervising and retaining the offending the KFC employees" were preempted by the Massachusetts Worker's Compensation Act.  See also Ruffino v. State Street Bank & Trust Co., 908 F.Supp. 1019, 1052 (D.Mass. 1995) (claim alleging negligent supervision and retention of co-worker for failure to prevent harassment barred by worker's compensation exclusivity provision). As to Plaintiff's argument that Akodo was not acting in furtherance of the employer's interest when he attempted to rape her, and thus the claims are not barred by the exclusivity provision, the claim at issue here is not against Akodo for the sexual assault.  Rather, it is against CECAA for its purportedly negligent supervision and hiring of Akodo.  Thus, it cannot be said that CECAA's supervision and hiring of Akodo was outside of the scope of employment.  To the contrary, hiring and supervision are traditional examples of conduct motivated to serve the employer.  See, e.g.,

---

[7] In light of this conclusion, the court need not address the CECAA Defendants' exclusivity argument regarding chapter 151B.

Anzalone v. Massachusetts Bay Transp. Authority, 526 N.E.2d 246, 249 (Mass. 1988) (holding that

claim was barred by workers' compensation exclusivity provision because supervisor's "complained-

of conduct related wholly to his position as Anzalone's supervisor and to the manner in which [he]

exercised his supervisory duties").  Accordingly, the court will dismiss Count VII.


V.     Conclusion

For these reasons, the court ALLOWS the CECAA Defendants' motion to dismiss (Dkt.

No. 32) as to Counts II, V, and VII.  The court also ALLOWS the CECAA Defendants' motion as

to Counts XI and XII but dismisses those claims WITHOUT PREJUDICE.  The court otherwise

DENIES the motion with respect to the remaining claims asserted against the CECAA Defendants.

It is So Ordered.


  _/s/ Mark G. Mastroianni_____
MARK G. MASTROIANNI
United States District Judge